LE GATE et al. v. BECK.

No. 33102. June 8, 1948.

*194 P. 2d 849.*

Banker & Bonds, of Muskogee, for plaintiffs in error.

Bliss & Bliss, of Tahlequah, for defendant in error.

LUTTRELL, J. On November 2, 1942, plaintiff, C. D. Beck, filed this

action against defendants H. C. LeGate, M. V. McDonald, and one Cunningham, to cancel a resale tax deed and quiet his title to lot 1, block 8 in the city of Tahlequah. On November 5, 1942, LeGate and McDonald filed an action against plaintiff and others, claiming title to lot 1, block 8, under the resale tax deed, seeking possession of the property, and asking that their title thereto be quieted. Cunningham, who was the grantee in the tax deed which plaintiff sought to cancel, filed a disclaimer, alleging that he had transferred his title to LeGate and McDonald. On motion of defendants the two cases were consolidated, and the petition filed by defendants in the action brought by them was treated and considered as an answer and cross-petition to the action filed by plaintiff. Trial was had to the court without a jury, and judgment was for plaintiff, canceling the resale tax deed upon payment by plaintiff of all taxes, penalties, interest and costs for which the lot was sold. Defendants appeal.

Pertinent facts, which are undisputed, are that plaintiff's parents were the owners of lots 1, 2, and 3 in block 8, in the city of Tahlequah, which was their home place. It was all enclosed by one fence, but the residence was located upon lots 2 and 3. In 1930 Mamie Beck, the mother of plaintiff, in whom apparently the title to all the property was vested, orally gave lot 1 to plaintiff, and plaintiff built a small house thereon. Plaintiff did not receive a deed to the property, but claimed title thereto up to the time of his mother's death, which occurred in 1938. He did not pay any taxes on the lot, testifying that since he had no deed he did not know what to do about it. Upon the death of plaintiff's mother in 1938, he employed an attorney in Tahlequah to clear up the title to the entire property, and pay or procure the cancellation of all back taxes thereon. Acting under such employment plaintiff's attorney brought an action against the other heirs, the county treasurer, and others, and on March 30, 1939, obtained a judgment decreeing plaintiff to be the owner of lot 1, and giving him a lien against lots 2 and 3 for money expended in clearing the property of tax liens and advancing the costs of administration and of the action. In that case the court also established the interest of all the heirs in lots 2 and 3, decreed partition, and found and adjudged that all taxes against lots 2 and 3 for 1938 and prior years had been paid, and ordered them canceled. The resale tax deed on lot 1 was issued in May, 1942, and was based on the original sale of 1938. Plaintiff took possession of the property when his mother gave it to him, and continued in possession up to the date of the rendition of the judgment herein.

At the trial of the instant case plaintiff's former attorney testified that upon the termination of the action above mentioned the heirs decided to procure a loan upon lots 2 and 3 for the purpose of repairing the house thereon and paying the taxes, as the attorney understood, on all the property; that in order to assist in procuring the loan he obtained from the office of the county treasurer a statement of the taxes due on the property, and delivered it to one of the heirs who lived in Muskogee, and that thereafter a loan was obtained by the heirs on lots 2 and 3. He testified that after the loan was obtained he again went to the office of the county treasurer and inquired about the taxes on the property; that he did not remember whether in making such inquiry he described the property particularly or whether he referred to it as the Beck property, but that the property was well known, and that the deputy treasurer looked it up and advised him that no taxes were due on the property; that thereupon he communicated this information to plaintiff, who was not then residing in Tahlequah, advising plaintiff that the title to the property had been cleared up and all taxes paid or canceled.

The county treasurer testified that he recalled the incident of the attorney making the inquiry, and of his being advised that all taxes were paid. He also testified that what was known as the Beck property consisted of lots 1, 2, and 3, in block 7 or 8 in Tahlequah.

Plaintiff testified that the attorney was employed to clear up the title to the property and see that the taxes were paid; that he was advised by his attorney that this had been accomplished; that he relied upon this information from his attorney, and had no knowledge of any delinquent taxes on lot 1 until he was informed that the lot had been sold for taxes; that upon receiving this information he promptly offered Cunningham, the purchaser at the tax sale, whatever amount he had paid for the property but that the offer was rejected.

Defendants contend that the trial court erred in holding the evidence produced by plaintiff sufficiently clear, cogent, and convincing to entitle plaintiff to relief, citing Brewer v. Davidson, 195 Okla. 654, 163 P. 2d 987, and Grimes v. Carter, 185 Okla. 469, 94 P. 2d 544. They assert that it is a reasonable inference from the testimony of the attorney and of plaintiff that they were concerned only with lots 2 and 3, on which there were delinquent taxes and on which they proposed to obtain a loan. We are unable to agree with this interpretation of the testimony of these witnesses. The testimony of both plaintiff and his attorney clearly discloses that plaintiff employed the attorney to clear up the title to the property; to confirm plaintiff's title to lot 1, and to cause to be paid or canceled all taxes against all the property; that the attorney so understood his employment, and that his inquiry at the treasurer's office in reference to the taxes was a precaution taken by him before advising his client that he had performed the services for which he was employed. In our judgment this is the only reasonable inference which may be drawn from the evidence.

We have numerous times held that where nonpayment of delinquent taxes is chargeable to misinformation given by the county treasurer to the owner of property, upon which information the owner acted in good faith, and as a result thereof permitted taxes to remain unpaid upon his property, which resulted in a sale thereof, a tax deed issued thereon would be canceled upon full money tender of the taxes due and delinquent. Grimes v. Carter, supra; Brewer v. Davidson, supra; Alexander v. James, 195 Okla. 309, 157 P. 2d 456; Ludeman v. Armbruster, 196 Okla. 452, 165 P. 2d 835.

In Alexander v. James, supra, the circumstances were somewhat similar to the circumstances in the instant case. In that case the owners inquired of the county treasurer as to the taxes due on the property, and whether the same had been paid by the Osage Indian Agency, and were advised by the county treasurer that the taxes had been so paid. Acting on this information they left unpaid taxes for which the property was subsequently sold at resale. We reversed the judgment of the lower court refusing to cancel the tax deed.

In that case, citing Grimes v. Carter, supra, and other cases, we said:

"In these cases we held in effect that where the taxpayer had made good-faith effort to ascertain and pay all taxes due or delinquent, and where misinformation was received and justifiably relied upon and by reason thereof and without fault of the taxpayer the tax delinquency was permitted to continue and result in final tax sale, that the taxpayer, upon clear proof, was entitled to relief against the tax deeds upon equitable considerations."

Defendants also call attention to the fact that plaintiff's attorney, in making the inquiry about the taxes, may have referred to the property as "the Beck property" instead of giving its legal description. But it appears from the evidence that the property was well known by that name, and that the Beck

family owned no other property in Tahlequah, so far as the record shows.

In Hull v. Baxter, 195 Okla. 425, 158 P. 2d 910, we held that such a description was sufficient in the absence of a demand by the county treasurer for a better description, and that misinformation given by the county treasurer upon such an inquiry whereby the taxpayer was prevented from paying his taxes entitled the taxpayer to relief in equity.

We hold that the evidence was sufficient to sustain the judgment.

Defendants also contend that the trial court erred in requiring plaintiff to pay all delinquent taxes as a condition precedent to the cancellation of the tax deed, and assert that the trial court should have required plaintiff to repay to the defendants the amount paid by them to Cunningham when they purchased the tax title from him. This question was not presented to the trial court, nor does the evidence disclose the amount paid by defendants to Cunningham for the property. It is settled that parties will not be permitted to urge in this court for the first time questions not raised by the pleadings or evidence in the lower court, or issues which were not presented to or passed upon by the trial court. Secrest v. Williams, 185 Okla. 449, 94 P. 2d 252; Butterick Co. v. Molen, 192 Okla. 602, 138 P. 2d 89.

Affirmed.

HURST, C.J., DAVISON, V.C.J., and RILEY, WELCH, CORN, GIBSON, and ARNOLD, JJ., concur.