Gleason ROMANS, Plaintiff in Error,

v.

Florene ROMANS, Defendant in Error.

No. 39156.

Supreme Court of Oklahoma.

Oct. 10, 1961.

Rehearing Denied Nov. 7, 1961.

Pat Malloy, Tulsa, for plaintiff in error.

Fred W. Woodson and Ungerman, Grabel, Ungerman, Leiter & Unruh, Tulsa, for defendant in error.

BLACKBIRD, Vice Chief Justice.

This appeal involves the trial court's allowance of an attorney fee to Mr. Fred W. Woodson, who appeared in the trial court as attorney of record for the defendant in error, the plaintiff in error's wife, who was plaintiff in this uncontested divorce action, and will hereinafter be referred to by that designation. Plaintiff in error, hereinafter referred to as defendant, engaged no separate counsel to contest his wife's petition for divorce, but he was present in person in the court room on November 20, 1959, when the trial court received plaintiff's uncontradicted evidence in support of the incompatibility alleged by her as the ground for said divorce.

At said trial, plaintiff also called as witnesses two Tulsa attorneys to testify as to what amount would constitute a reasonable attorney fee for her attorney. One of them was of the opinion that the reasonable value of Mr. Woodson's services in the matter was a minimum of $5,000 and a maximum of $6,500. The other attorney's opinion of said value gave the same minimum, but named $7,500 as the maximum reasonable fee for said services. The defendant made no attempt to cross-examine these attorney witnesses, or to offer any evidence to contradict their testimony, and the court found that a reasonable attorney fee for Woodson would be $6,000, but continued the case until November 23, 1959, to enable defendant to seek counsel on the matter. Thereafter, defendant engaged, as his counsel, the attorney who represents him here, and said attorney obtained a continuance of the case until the next day, when he filed, on behalf of defendant, a pleading entitled: "Motion to Introduce Evidence on the Rea-

sonableness of Attorney Fee." Said motion was sustained the same day, and, at the hearing thereupon held, defendant, by his own testimony and that of two attorneys, attempted to show that a reasonable fee for Mr. Woodson would be a much lesser amount than that testified to previously by plaintiff's witnesses. The opinions given by his witnesses indicated that a reasonable amount for such a fee would not exceed $2,000.

At the close of the hearing, the court entered its decree approving an agreement Mr. Woodson had previously negotiated between the parties as to the division of their property, and the care and custody of their minor son, and fixing and describing in detail certain payments to be made to plaintiff by defendant, and allowing plaintiff's attorney an additional fee of $250 for that hearing, in addition to the $6,000 fee he had, as aforesaid, previously found to be reasonable. The court further ordered that the $150, previously paid by plaintiff at the beginning of the action, be deducted from the total fee of $6,250, leaving a balance of $6,100 due from defendant to plaintiff for that item.

After the overruling of defendant's motion for a new trial as to the aforesaid allowance of plaintiff's attorney fee, he perfected the present appeal.

Under the two propositions defendant urges for reversal, he argues that said allowance is contrary to the intent of Title 12 O.S.1951 § 1276, as said statute has been construed by this court; and that said allowance is unreasonable and arbitrary.

Judging from his argument seeking to show that the case of Amsey v. Amsey, 201 Okl. 261, 204 P.2d 975, is controlling in the matter, it is defendant's position (as we understand it), under his first proposition, that if Mr. Woodson earned any fee, plaintiff, because of her "means and property", should have been required, by the trial court's judgment, to pay it. We think this represents a departure, on appeal, from the position he took at the hearing, out of which this appeal arose.

After a careful examination of the record of said hearing, we find no indication therein that such was his position there. Never, until after entry of the judgment, did defendant contend that his wife, rather than he, should pay said attorney's fee. While it is true that he testified to the effect that the matter of said fee was never mentioned in his conferences with Mr. Woodson—his attorney, in representations to the trial judge, and statements in court, made it plain that all he was taking issue with was the size, or "reasonableness" of the fee that said judge had previously indicated he thought was reasonable for Woodson. We think defendant should not now be heard to present a theory, or take a position, that is new and different, and obviously inconsistent, with the one presented to the trial court. This court has consistently held that a litigant cannot secure reversal of such a court's judgment by assuming a position inconsistent with the one taken in that court. See Cities Service Oil Co. v. Merritt, Okl., 332 P.2d 677. Accordingly, we will not further consider defendant's Proposition I as ground for reversing the judgment of which he complains.

Defendant's argument under his Proposition II that the amount of plaintiff's attorney's fee was excessive renders appropriate a further narration and discussion of the pertinent facts.

According to the undisputed evidence, plaintiff first conferred with Attorney Woodson about obtaining an uncontested divorce on April 2, 1959. Woodson thereafter instituted the action by filing a petition on her behalf and the necessary papers to obtain service on the defendant. Said attorney also appeared before the court and obtained an order containing restraining provisions (whose exact character does not appear) and requiring defendant to pay plaintiff "temporary support money." (Said order apparently included a provision for suit money and/or payment of the installment of $150 on defendant's attorney fee, hereinbefore mentioned.)

■ The hereinbefore mentioned agreement between the parties as to a division of their propery, and the care and custody of their minor son, was definitely spelled out in a rather lengthy instrument entitled: "Property Settlement Agreement", some of whose provisions were drafted, and redrafted, the third time before Woodson was able to persuade both parties to subscribe their names to it on October 20, 1959. Said instrument, which, as aforesaid, was approved by the trial court a little more than a month later, and apparently made a part of the decree entered in this case, adjusted, in rather intricate detail, the parties' rights with reference to property of various kinds, having a net value of some $380,000; and was formulated after Mr. Woodson had had several conferences with the defendant and numerous ones with the plaintiff, and had consulted a certified public accountant, "regarding the tax consequences of the matter", to both plaintiff and defendant. Mr. Woodson estimated, on the basis of records kept in his office, that he had worked 100 hours on the case, over a period of almost 8 months, and testified further that he had made 4 appearances in court in connection with it. If plaintiff lives as long as 20 years subsequent to the decree, she will derive $165,000 in monetary benefits from the court-approved settlement. There is persuasive evidence in the record refuting defendant's contention that " * * * Mr. Woodson's services in this matter was simply to reduce to writing an agreement already entered into between the principal parties." There is also evidence contradicting his inference that Mr. Woodson had no work to do in connection with formulating an accurate description and appraisal of the various properties involved in the case. Defense counsel recognizes that the husband's "pecuniary ability" is a factor to be considered in determining the reasonableness of a fee of this kind, and he also seems to concede that the amount of the attorney's time necessarily expended in rendering his service is also to be taken into consideration.

He has also recognized that the character and value of the property involved is also a factor. In Helvey v. Helvey, Okl., 262 P.2d 445, where the property involved had a net value of $337,647.34, plaintiff's attorney was allowed a total fee of $7,500. In McElreath v. McElreath, Okl., 317 P.2d 225, where the defendant's property was valued at between $100,000 and $300,000, we affirmed the trial court's allowance of $10,000 as a reasonable fee for plaintiff's attorneys. In both of those cases, however, the disposition of property to be made between the parties was strongly contested in court, with trial work, and preparation for trial, not entailed in this case. Upon consideration of the record and the pertinent facts and circumstances in the present case, we think that adequate compensation for plaintiff's attorney in this case would have been a total of $5,000; and so hold. It follows that the trial court's allowance for such fee of a total of $6,250 was excessive in the amount of $1,250. Said court's judgment is therefore modified to that extent, and, as thus modified, is hereby affirmed.

WILLIAMS, C. J., and DAVISON, JOHNSON, JACKSON, IRWIN and BERRY, JJ., concur.