STATE of Oklahoma ex rel. William E.
REMY, et al., Appellees,

v.

The CITY OF NORMAN, Oklahoma, A
Municipal Corporation, Appellant.

No. 53578.

Supreme Court of Oklahoma.

Nov. 17, 1981.

Rehearing Denied March 29, 1982.

Terry Guy Shipley, Noble, Charles Nesbitt, Oklahoma City, for appellees.

Douglas J. Juergens, City Atty., Norman, for appellant.

DOOLIN, Justice:

In 1967 the City of Norman, appellant in this matter (City) entered into an agreement and cross-conveyance of approximately 160 acres of land with certain defendants hereinafter designated Johnson heirs. The agreement was entered into in order to define property boundaries and settle any boundary disputes between the parties, enabling an oil company to apportion royalties between the parties. In 1972 Remy, a resident taxpayer of Norman, brought a tax-

payer's action under 62 O.S. 1971 § 373,[1] to return conveyed land to the City, and to recover his statutory reward. Remy's argument was that the City had no authority to convey the land, and therefore he had standing to sue under § 373.

After a trial in which the judge found for defendants, Remy appealed to this Court. On appeal, we reversed and remanded, holding that the City had no authority to dispose of the land, and that the agreement and cross-conveyance entered into constituted an unauthorized contract, entitling Remy to relief under § 373.[2] We remanded to the trial court to evaluate the property of the City (for purposes of determining Remy's reward under § 373) and to take other appropriate action not inconsistent with our opinion.

For approximately the next two years, the parties (mainly Remy, the Johnson heirs, and the Norman Asphalt Co.—not a party) engaged in extensive action via interrogatories to determine the proper valuation of the property.

On January 6, 1979, the District Judge entered a Court Minute as follows: "There being no statutory or decisional guidelines to determine the date of the fair market value of the recovered realty to be divided with plaintiff, it is equated with eminent domain and the 'time of the taking' fixed as October 19, 1967, for which time the fair market value should be determined. In addition thereto, plaintiff is entitled to share in the subsequent reasonable rental income

from the property until such time as it was returned to the control of the City . . ." This journal entry was made in connection with discovery proceedings.

On February 5, 1979, another court minute was entered indicating that a trial was set for March 15, 1979 "on value."

On March 14, 1979, a pre-hearing stipulation was filed, signed by the attorneys for the City and for Remy. This stipulation provided that for the purpose of facilitating the hearing on value, to determine Remy's reward, set for March 15, 1979, the City and Remy agreed that the 1967 date of surrender of the property should be used, and that the period of time for determining the reasonable rental income or value derived from the property for purposes of determining Remy's reward was that period commencing October 19, 1967 and ending January 18, 1977.

On March 15, 1979, the hearing on value was held with Remy presenting evidence as to the fair market value of the land in 1967, the rental value from October 19, 1967 through January 18, 1977, and the oil and gas value of the property. The City presented no evidence and conducted minimal cross-examination of Remy's expert witnesses. Apparently, the attorneys for the Johnson heirs were present for a very short time, and presented no evidence, since their impression was that this was merely a matter for the City and Remy to hash out. Toward the end of the March 15, 1979 hear-

1.  62 O.S.1971 § 373 provides: Upon the refusal, failure, or neglect of the proper officers of the State or of any county, township, city, town, or school district, after written demand made upon them by ten resident taxpayers of the State or such county, township, city, town, or school district, to institute or diligently prosecute proper proceedings at law or in equity for the recovery of any money or property belonging to the State, or such county, township, city, town or school district, paid out or transferred by any officer thereof in pursuance of any unauthorized, unlawful, fraudulent, or void contract made, or attempted to be made, by any of its officers for the State or any such county, township, city, town, or school district, or for the penalty provided in the preceding section, any resident taxpayer of the State or such county, township, city, town, or school district

affected by such payment or transfer after serving the notice aforesaid and after giving security for cost, may in the name of the State of Oklahoma as plaintiff, institute and maintain any proper action which the proper officers of the State, county, township, city, town, or school district might institute and maintain for the recovery of such property, or for said penalty; and such municipality shall in such event be made defendant, and one-half the amount of money and one-half the value of the property recovered in any action maintained at the expense of a resident taxpayer under this Section, shall be paid to such resident taxpayer as a reward.

2.  *State ex rel. Remy v. Agar*, 559 P.2d 1235 (Okla.1977), hereafter referred to as "Remy I."

ing, some discussion was had as to entering a judgment against the Johnson heirs but no judgment was rendered. Interlocutory judgment was entered against the City, finding the fair market value of the property for purposes of determining the reward for Remy was $630,627.20, which was composed of: (a) $191,666.00—land value on October 19, 1967, (b) $383,677.00—land rental value for the period October 19, 1967 through January 18, 1977, (c) $9,559.20—mineral value, producing portion October 19, 1967, (d) $29,500.00—mineral value, non-producing portion October 19, 1967, and (e) $16,225.00—mineral rental value, non-producing portion for the period October 19, 1967 through January 18, 1977.

On March 22, 1979, a final judgment was rendered in the case to the same effect as the interlocutory order. However, before judgment was entered several motions were made on March 21, 1979. The attorneys for the Johnson heirs had apparently learned on March 21st of the March 15th discussion regarding the possibility of a judgment being entered against their clients. The attorneys for the Johnson heirs made the following motions: Motion to Defer Judgment, Motion to Reopen Hearing, Motion to Reconsider, Motion for Time to Brief and a Demurrer to Remy's petition. All were denied on March 22, 1979. Judgment was entered for Remy against only the City in the amount of one-half of the $630,627.20 value, or $315,313.60.

■ Timely appeal by the Johnson heirs and the City followed.[3]

The City asks this Court to allow Remy a reasonable reward *only*, to enter a judgment for $383,677.00 against the Johnson heirs (for the rental value of the property, as revealed by Remy's evidence, during the ten-year period they held the land improperly) and to order that Remy's attorney's fees be paid out of this rental value (and an existing escrow fund set up by the City), when and if the money is paid to the City.

The Johnson heirs request if the judgment against the City is affirmed then the fair rental value of $383,677.00 not be made the basis of any future claim against them, by way of res judicata, collateral estoppel, estoppel by judgment or otherwise, and that the issues between the City and the Johnson heirs be settled in separate litigation.

■ Any assignments of alleged error not presented in the briefs will be treated as abandoned.[4]

### Valuation of Property for Reward Purposes

City contends that the valuation of the property for purposes of determining Remy's reward was contrary to law. The trial court in valuing the property included the fair market value of the property on the date of the attempted transfer, the fair market value of the producing and non-producing mineral interest, the fair rental value of the property from October 19, 1967 through January 18, 1977 and the fair rental value of the mineral interest for that same period. The heart of City's argument deals with the inclusion of the fair rental value as a part of the value of the property for purposes of determining Remy's reward under 62 O.S.1971 § 373. The only guidance provided by § 373 is that the reward shall be "one-half the amount of money and one-half the *value* of the property recovered."

In the original petition filed in 1972, Remy requested the land be returned to the City, for an accounting for the monies and consideration received by the other defendants (Johnson heirs) from the use of the property, and a money judgment for the City for these same monies and considera-

---

3. Although the Petition in Error was filed April 23, 1979, more than 30 days after final judgment (12 O.S.1971 Ch. 15, App. 2, Rule 1.14 & 1.15) this Court takes judicial notice that the 30th day was one when the office of the Court Clerk of this Court was closed. Since the Petition in Error was filed on the next business day it therefore was timely filed, *David v. Pennwalt Corporation*, 592 P.2d 980 (Okla.1979) citing 12 O.S.1971 § 82 and 25 O.S.1971 § 82.1.

4. *Chancellor v. Chancellor*, 202 Okla. 389, 214 P.2d 261 (1950).

tion; or, alternatively for a judgment against the other defendants for the City based on fair rental value of the property during the time of wrongful possession by the other defendants.

We know that this action is one for a *reward* under § 373, supra. Section 373 provides that upon meeting certain conditions the taxpayer may institute and maintain any proper action for the recovery of such property and shall be rewarded upon recovery of the property one-half the *value* of the property recovered. The statute speaks of a proper proceeding (in law or equity) when referring to the recovery of property by a municipality and of *a proper action which proper officers of the City might maintain or institute* when a taxpayer acts. The statute mentions the basis of the proceedings for recovery of property transferred is for the value of any unauthorized, unlawful, fraudulent or void contract made. Thus we ponder the meaning of what encompasses "value" or its definition.

It is axiomatic that under § 373 a reward is valuable [5] and likewise the measure of value under the statute is damages. Damages in itself is a term as imprecise as our rewarding statute, § 373.

We note the statutory emphasis given to void, unlawful, fraudulent or unauthorized contracts, and we are inclined, and do hold, that our plaintiff taxpayer is entitled to a reward in "an amount which will compensate the party aggrieved for *all* the detriment proximately caused thereby or which, in the ordinary course of things, would be likely to result therefrom." [6] We are not unmindful that there is no technical "breach of contract" as contemplated in the damage statute last referred to, but we find it broad enough to include the value of the reward provisions as an unlawful, void, fraudulent or unauthorized taking under § 373. [7]

At the hearing "on value" on March 15, 1979, the City and Remy stipulated to the valuation technique or formula to be used in arriving at the value of the land for reward purposes. [8] Since the City formally stipulated that "value" of the land for purposes of determining Remy's reward would consist of two elements: (1) actual fair market value on October 19, 1967, plus (2) rental value for the period from October 19, 1967, to January 18, 1977, it cannot now be heard to complain that the reward included the fair rental value as a part of the value of the property and was therefore not a reasonable reward, nor can it complain that Remy did not "recover" for the City the fair rental value of the property from October 19, 1967, to January 18, 1977. [9]

We would point out that had there not been a stipulation, the statute which states, "one-half the value of the property recovered," would seem to dictate that the date for assessing the value would be logically the date that Remy recovered the property for the City, i.e., 1977.

---

5. Value is defined by Blacks Law Dictionary, 5th Edition under numerous headings, some well defined in law, e.g. cash value, fair market value, book value, surrender value, etc. Other values range from economic values to appraised value and so on ad infinitum. Webster's-Merriam Dictionary, (unabridged) 3rd Edition gives 12 definitions for value, some obviously pertinent, some not.

6. 23 O.S.1971 § 21 (Emphasis supplied).

7. We find it unnecessary to rely upon condemnation proceedings and case law as to appraised value for it adds more confusion to the problem presented.

8. "For the purpose of facilitating the hearing on determination of value of the 'dump ground property' recovered by plaintiff and the rental value of said property for purposes of determining plaintiff's 'reward' pursuant to 62 O.S. 1971 § 373, the plaintiff, State of Oklahoma ex rel. William E. Remy, and the defendant, the City of Norman, Oklahoma, a municipal corporation, hereby stipulate as follows:

    1. That the date for determination of the fair market value of the 'dump ground property' for purposes of determining plaintiff's 'reward' is as of October 19, 1967.

    2. That the period of time for determining the reasonable rental income or value derived from said property for purposes of determining plaintiff's 'reward' is that period commencing October 19, 1967 and ending January 18, 1977.

    SO STIPULATED."

9. *Romans v. Romans,* 366 P.2d 760 (Okla.1961).

**224**

### Role of City in Taxpayer's Suit

■ The City also contends that the entry of judgment against it alone is error, and asks this Court to enter a judgment in its favor for the rental value against the Johnson heirs. Implicit in this argument is the proposition that the proper role for the City in a § 373 suit is only as a nominal party. Section 373 requires the City to be named as a defendant. *Vaughan v. Latta*[10] held that the municipality must be designated as a party, "for in no other way could the municipality have its day in court, and have its rights considered, nor be bound by the judgment rendered." Clearly, the City is a real party in interest.[11]

■ The City contends that the judgment for the reward should not be entered against it alone. Prior Oklahoma cases have held that under a § 373 action one-half of the value of the property recovered in the action maintained by the taxpayer goes to the taxpayer as a reward for his services.[12] The statute is silent as to a municipality's remedy, if any. Thus logic demands the judgment for the reward under § 373 contemplates it to be against the City alone. Admittedly, the cases cited in footnotes 10 and 11 are clearly distinguishable from our factual situation. Those cases dealt with procedural matters, e.g. demurrers to petitions, removal to federal court, motions to dismiss, statute of limitations, etc. The instant case has matured past the procedural question, and we now decide the proper value of the reward.

In *Remy I* at page 1241, it is clear that the reward for the return of property is to be paid by the City. *Remy I* held "..., *the*

City, who through efforts of the taxpayer has had land returned to it, *rewards the taxpayer* for his or her efforts by sharing the benefits of the taxpayer's efforts with the taxpayer ...*"* (Emphasis added).

Further analysis of Remy indicates plaintiff made no allegations of criminal or tortious wrongdoings on behalf of the Johnson heirs nor was relief demanded against them. *Remy I* reveals that it is the acts of the City conveying property (trust property) held for the benefit of the inhabitants of the City, a City dump, that is unauthorized, unlawful, fraudulent or void.[13]

We do not decide whether a landowner may adjust his disputed boundary with a City under the facts of this decision, but leave that question to another day.

### City's Right to Judgment against the Johnson heirs in this action

■■ The City urges that this Court enter a judgment for it against the Johnson heirs for the reasonable rental value determined at the March 15, 1979 hearing. However, this is the first time the City has requested relief against the Johnson heirs. As a general rule, relief, which was not asked for in the court below, cannot be granted at appellate level.[14] "If codefendants are entitled to an adjustment of liabilities between them, the attention of the court below must be called to such right of adjustment or it cannot be made by the appellate court."[15] Accordingly, we refuse to enter such a judgment under § 373.

This is an action limited in nature to a reward under § 373 made to a taxpayer payable only by the City as held aforesaid.

10. *Vaughan v. Latta*, 168 Okla. 492, 33 P.2d 795 (1934).

11. *Territory v. Woolsey*, 35 Okla. 545, 130 P. 934 (1913); *State of Oklahoma ex rel. Williams v. ONG Corporation*, 83 F.2d 986 (10th Cir. 1936).

12. *Morrison v. City of Muskogee*, 70 Okla. 19, 172 P. 796 (1918); *Schilling v. Oklahoma City*, 67 Okla. 18, 168 P. 227 (1917).

13. A 62 O.S.1971 § 372 action is probably not available to Remy because of the one year statute of limitations applicable to fraudulent acts of officials and others, in the nature of a penalty. See *Territory v. Woolsey*, 35 Okla. 545, 130 P. 934 (1913) and *Remy I*, page 1241.

14. *Pennsylvania Glass Sand Corporation of Oklahoma v. Ozment*, 434 P.2d 893 (Okla. 1967); *American Home Fire Assur. Co. v. Hargrove*, 109 F.2d 86 (10th Cir. 1940); *Thorsteison v. Waters*, 65 Wash.2d 739, 399 P.2d 510 (1965).

15. 4 C.J.S. Appeal & Error § 232, p. 677.

There is no cross-claim made or prayer for judgment over by the City against the Johnson heirs until made in the petition in error and in its brief.[16] The City is entitled to no relief over against the Johnson heirs in these proceedings. We do not indicate what rights, if any, City has in a separate action.

### Propriety of Bringing a § 373 Action, as opposed to a Common Law Action

■ The City also contends that this Court erred in *Remy I*, when holding Remy's action was properly brought under § 373. City desires the common law principles enunciated in *State ex rel. Burk v. Oklahoma City*[17] to be applied. *Burk* was a case where a citizen of Oklahoma City proceeded under 11 O.S.1961 § 524 to vacate a street so that a building could be built across the street to connect two buildings on either side of the street. The citizen fraudulently alleged that the street had been occupied adversely to the public for five years, which was an essential jurisdictional requirement for the court in the vacation proceeding. The Court in *Burk* held that 62 O.S.1971 §§ 372[18] and 373 did not apply because "the City Council held the property in trust and was unable to sell, barter or transfer it for a private use (the same basic decision as in *Remy I, supra*). The vacation proceedings before the court were void because of lack of jurisdiction.

The property was never actually transferred nor the street legally vacated. The provisions of 62 O.S.1971 §§ 372, 373 are inapplicable."[19] (Parenthetical phrase supplied).

We believe that *Burk* reached a correct result, but is not applicable to the case at bar. 62 O.S.1971 § 373 gives a taxpayer a cause of action whenever the proper officers refuse, fail or neglect, upon written demand, to institute or diligently prosecute proper proceedings for the recovery of any money or property belonging to the State, county, city, township, town or school district, paid out or transferred by any officer thereof in pursuance of any *unauthorized, unlawful, fraudulent or void* contract made, or attempted to be made by any of its officers.

The Court in *Burk* specifically found no evidence that the defendants (the City of Oklahoma City and certain City Councilmen) were guilty of any fraud or collusion, and that the defendants took no active part in the vacation of the street. Therefore, a § 373 action was not proper in the *Burk* case. There was no transfer or attempted transfer by the City (the citizen in *Burk* had moved to vacate the street and took the overt action equivalent to the transfer in the instant case). In *Burk* no City officials made or attempted to make an unauthorized, unlawful or fraudulent contract.

16. A question not raised in trial court by pleadings or evidence so far as the record on appeal shows will not be considered. *Watts v. Elmore*, 198 Okla. 141, 176 P.2d 220 (1946); *LeGate v. Beck*, 200 Okla. 378, 194 P.2d 849 (1948) and *Brown v. Anderson National Bank*, 197 F.2d 911 (10th Cir. 1952).

17. *State ex rel. Burk v. Oklahoma City*, 522 P.2d 612 (Okla.1974).

18. 62 O.S.1971 § 372 provides: "Every officer of the State and of any county, township, city, town, or school district, who shall hereafter order or direct the payment of any money or transfer of any property belonging to the State or to such county, township, city, town, or school district, in settlement of any claim known to such officers to be fraudulent or void, or in pursuance of any unauthorized, unlawful or fraudulent contract or agreement made or attempted to be made, for the State or any such county, township, city, town, or school district,

by any officer thereof, and every person, having notice of the facts, with whom such unauthorized, unlawful or fraudulent contract shall have been made, or to whom, or for whose benefit such money shall be paid or such transfer of property shall be made, shall be jointly and severally liable in damage to all innocent persons in any manner injured thereby, and shall be furthermore jointly and severally liable to the State, county, township, city, town, or school district affected, for double the amount of all such sums of money so paid, and double the value of property so transferred, as a penalty, to be recovered at the suit of the proper officers of the State or such county, township, city, town, or school district, or of any resident taxpayer thereof, as hereinafter provided.

19. *State ex rel. Burk v. Oklahoma City*, 522 P.2d 612, 620 (Okla.1974).

*Burk* held only that §§ 372 and 373 were inapplicable because no transfer was made; however, the real key to the case is that no transfer was made or attempted to be made by a City official.[20]

In *Remy I* there was a conveyance by the City Council and that transfer was made pursuant to an unauthorized, unlawful or void contract made or attempted to be made by a City official.. Because § 373 properly applies in this case, an award of *only* attorney's fees as per *Burk* would deny the reward provided under the statute.

### Estoppel by Judgment—Res Judicata

The *Johnson* heirs are concerned that the finding of fact by the trial judge as to the reasonable rental value of the property during the ten year period they held the property will be asserted against them in a later proceeding. Because no judgment was ever requested by the City against the Johnson heirs for the fair rental value,[21] we believe it would be premature to answer the question of possible res judicata or estoppel by judgment.[22]

AFFIRMED.

BARNES, V.C.J., C. WILSON, Special Justice, HODGES and OPALA, JJ., concur.

IRWIN, C. J. and LAVENDER, SIMMS and HARGRAVE, JJ., dissent.

WILLIAMS, J. certified his disqualification. The Honorable CHARLES M. WILSON was appointed Special Justice in his stead.

---

20. *State ex rel. Sweeney v. ONG Corp.*, 177 Okla. 62, 57 P.2d 626 (1936).

21. Nor were any conflicting or hostile claims brought in issue by proper pleadings or otherwise during the March 15 value hearing.

22. This Court held in *Smith v. Williamson*, 208 Okla. 323, 256 P.2d 174 (1953): "As a general rule, a judgment settles nothing between codefendants who are not adversary parties among themselves, and [sic] unless their conflicting or hostile claims were brought in issue by proper pleadings or otherwise, and were actually litigated and adjudicated in the action."