SHELLEM v. GRUNEWELD
2023 OK 26
Case Number: 120131
Decided: 03/28/2023
THE SUPREME COURT OF THE STATE OF OKLAHOMA
Cite as: 2023 OK 26, __ P.3d __

 
NOTICE: THIS OPINION HAS NOT BEEN RELEASED FOR PUBLICATION. UNTIL RELEASED, IT IS SUBJECT TO REVISION OR WITHDRAWAL. 

 

 

BRIAN and JANELLE SHELLEM, Husband and Wife, individually and on behalf of their Minor Children, C.S. and M.S.; BRETT and EMILIE GARRELTS, Husband and Wife, individually and on behalf of their Minor Child, B.G.; and GRAY and THERESA EPPERLY, Husband and Wife, individually and on behalf of their Minor Children, L.E., C.E., O.E., and M.E., Plaintiffs/Appellees,
v.
ANGELA GRUNEWELD, Superintendent of Edmond Public Schools, and Edmond Board of Education Members JAMIE UNDERWOOD, CYNTHIA BENSON, KATHLEEN DUNCAN, LEE ANN KUHLMAN, and MEREDITH EXLINE, sued in their official and individual capacities, Defendants/Appellants.

ON APPEAL FROM THE DISTRICT COURT OF OKLAHOMA COUNTY

HONORABLE DON ANDREWS, DISTRICT JUDGE

¶0 Parents, individually, and on behalf of their minor children, filed a Petition for Declaratory Judgment and Injunctive Relief and an Application for Temporary Restraining Order requesting the trial court enjoin Edmond Public School District from enforcing its quarantine policy. The quarantine policy required unvaccinated students who have not tested positive for COVID-19 within ninety days and who are identified as a close contact to quarantine for either seven or ten days; whereas vaccinated students who are identified as a close contact are not required to quarantine. The trial court denied the parents' Temporary Restraining Order, but granted a Temporary Injunction on the basis that the parents established the quarantine policy likely violated the Equal Protection Clause of the 14th Amendment to the United States Constitution. The Edmond Public School District appealed and we retained the matter. We vacate the trial court's order and grant declaratory relief.

MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
ORDER OF THE DISTRICT COURT VACATED;
DECLARATORY JUDGMENT GRANTED.

Stanley M. Ward, Noble, Oklahoma, and Richard Labarthe and Alexey Tarasov, LABARTHE & TARASOV, a professional association, Norman and Oklahoma City, Oklahoma for Plaintiffs/Appellees.

F. Andrew Fugitt and Justin C. Cliburn, THE CENTER FOR EDUCATION LAW, a professional association, Oklahoma City, Oklahoma for Defendants/Appellants.

OPINION

ROWE, V.C.J.:

I. BACKGROUND

¶1 During the summer of 2021, Appellants, Edmond Public School Board Members and Edmond Public School District Superintendent, Angela Grunewald, (collectively "District") anticipated a complete return to in-person instruction for the 2021-2022 school year. Prior to the start of the school year, the Oklahoma City County Health Department ("OCCHD") expressed to District that quarantines should be recommended rather than required. In response, District prepared a standard letter that alerted parents when their child was exposed to a positive COVID-19 case, which left the responsibility "for carrying out a quarantine or not" up to the parents.

¶2 Based on guidance from the Centers for Disease Control and Prevention ("CDC"), OCCHD informed District that individuals deemed a "close contact"

¶3 The Policy provided that a vaccinated close contact was not required to quarantine unless he or she displayed symptoms, but an unvaccinated close contact that had not tested positive within ninety days was required to quarantine. In the case of being identified as a close contact, the unvaccinated individual was presented with two options for quarantine: (1) a 7-day quarantine, in which the individual may return to school on day 8 if he or she provides a negative COVID-19 test on or after day 5 and continues to remain symptom free; or (2) a 10-day quarantine, in which the individual may return to school on or after day 11 if he or she remains symptom free.

¶4 As a result of the Policy, several unvaccinated students were required to quarantine due to being identified as a close contact. The Appellees, parents of children enrolled in Edmond Public Schools affected by the Policy ("Parents"), individually and on behalf of their children, filed a Petition for Declaratory Judgment and Injunctive Relief and an Application for Temporary Restraining Order ("TRO") in the District Court of Oklahoma County. Parents alleged the Policy violated: (1) 70 O.S. § 1210.189

¶5 Following denial of the TRO, the trial court heard testimony on Parents' Petition for Injunctive Relief. A week later, the Attorney General filed a motion for leave to file an amicus curiae brief in support of granting Parents' Injunction on the basis that the Policy violates 70 O.S.Supp.2021, § 1210.189

¶6 District timely appealed raising five counts of error relating to the trial court's Equal Protection analysis and inconsistencies of the trial court's order concerning evidence of irreparable harm. In addition, the Attorney General filed an amicus curiae brief with consent of the parties suggesting to the Court that while the trial court properly enjoined District from enforcing the Policy, the trial court improperly interpreted 70 O.S.Supp.2021, § 1210.189

II. STANDARD OF REVIEW

¶7 To obtain a temporary injunction, a plaintiff must show that four factors weigh in his or her favor: (1) the likelihood of success on the merits; (2) irreparable harm to the party seeking the relief if the injunction is denied; (3) their threatened injury outweighs the injury the opposing party will suffer under the injunction; and (4) the injunction is in the public interest. Edwards v. Bd. Of Cnty Comm'rs of Canadian Cnty, 2015 OK 58378 P.3d 54Id.

¶8 "A judgment issuing or refusing to issue an injunction will not be disturbed on appeal unless the lower court has abused its discretion or the decision is clearly against the weight of the evidence." Id. ¶ 11, 378 P.3d at 58. "To reverse under an abuse of discretion standard, an appellate court must find the trial court's conclusions and judgment were clearly erroneous, against reason and evidence." Murlin v. Pearman, 2016 OK 47371 P.3d 1094Dowell v. Pletcher, 2013 OK 50304 P.3d 457

¶9 "[A] clear abuse of discretion standard includes appellate review of both fact and law issues: 'In order to determine whether there was an abuse of discretion, a review of the facts and the law is essential.'" Christian v. Gray, 2003 OK 1065 P.3d 591Bd. of Regents of Univ. of Oklahoma v. Nat'l Collegiate Athletic Ass'n, 1977 OK 17561 P.2d 499de novo. Lierly v. Tidewater Petroleum Corp., 2006 OK 47139 P.3d 897de novo standard. Corbeil v. Emricks Van & Storage, Guarantee Ins., 2017 OK 71404 P.3d 856

¶10 The trial court determined Parents were likely to succeed on the merits of their Equal Protection Clause claim against District but were unlikely to succeed on the merits of their claim that the Policy violated 70 O.S.Supp.2021, § 1210.18970 O.S.Supp.2021, § 1210.189

III. DISCUSSION

¶11 On March 15, 2020, Oklahoma Governor, J. Kevin Stitt, declared a statewide emergency due to the coronavirus pandemic and its threat to the people of this State and their peace, health, and safety.

¶12 Senate Bill 658 made additions and amendments to school health and safety statutes within 70 O.S.2011, §§ 1210.19170 O.S.Supp.2021, §§ 1210.189

A. A board of education of a public school district or a technology center school district, the board of regents of an institution within The Oklahoma State System of Higher Education, the governing board of a private postsecondary educational institution, the Oklahoma State Regents for Higher Education, the State Board of Education or the State Board of Career and Technology Education shall not:

1. Require a vaccination against Coronavirus disease 2019 (COVID-19) as a condition of admittance to or attendance of the school or institution;

2. Require a vaccine passport as a condition of admittance to or attendance of the school or institution; or

3. Implement a mask mandate for students who have not been vaccinated against COVID-19.

B. As used in this section, "vaccine passport" means documentation that an individual has been vaccinated against COVID-19.

C. Nothing in this section shall be construed to apply to any public or private healthcare setting.

The subsection at issue before us is § 1210.189(A)(1).

¶13 Before the trial court, Parents and the Attorney General argued the Policy violates § 1210.189(A)(1) because the Policy's quarantine requirement for unvaccinated students effectively excludes those students from attending school due to their COVID-19 vaccination status. District made several arguments in response to demonstrate the Policy does not violate § 1210.189(A)(1). First, District argues the Policy is not based on COVID-19 vaccination status, pointing out that hundreds of unvaccinated students attend school within the district each day. Specifically, District contends COVID-19 vaccination status is not the only condition that triggers whether a student is required to quarantine. Rather, District asserts what determines whether a student should be temporarily quarantined is evidence of that student's heightened immunity to COVID-19. District highlights that the Policy references three types of students exposed to a positive COVID-19 case: (1) vaccinated students; (2) unvaccinated students who have tested positive for COVID-19 within the previous ninety days; and (3) unvaccinated students who have not tested positive for COVID-19 within the previous ninety days.

¶14 To the extent District uses a student's vaccination status as a factor of whether they can attend school, § 1210.189(A)(1) is violated. The statute explicitly prohibits school districts from utilizing a student's COVID-19 vaccination status as a condition of whether he or she may attend school in-person. The Policy's consideration of whether a student has tested positive for COVID-19 within the previous ninety days in addition to a student's COVID-19 vaccination status does not cure the violation. If we were to conclude that the Policy does not violate § 1210.189(A)(1) because the Policy also factors in whether a student has tested positive for COVID-19 within the previous ninety days, the result would run contrary to the intent and plain language of the statute. Interpreting the Policy's condition for quarantine as a level of heightened immunity is a distraction from what the Policy on its face and in practice accomplishes: conditioning a student's attendance of school on COVID-19 vaccination status. Accordingly, District's argument on this point fails.

¶15 Second, District contends quarantined students that participate in virtual learning are counted in "attendance;" therefore, the Policy does not violate § 1210.189(A)(1). Parents and the Attorney General argue "attendance" means physical, in-person attendance. Conversely, District argues that in light of the pandemic, "attendance" is not limited to physical, in-person attendance because of the implementation of virtual learning.

¶16 "The cardinal rule of statutory interpretation is to ascertain and give effect to legislative intent and purpose as expressed by the statutory language." Odom v. Penske Truck Leasing Co., 2018 OK 23415 P.3d 521Id. "Intent is ascertained from the whole act in light of its general purpose and objective considering relevant provisions together to give full force and effect to each." Keating v. Edmondson, 2001 OK 11037 P.3d 882Odom, ¶ 18, 415 P.3d at 528.

¶17 To ascertain legislative intent, we begin with the text. The plain meaning of "attendance" is "the act or fact of attending something."Odom, ¶ 17, 415 P.3d at 528 ("It is presumed that the Legislature has expressed its intent in a statute's language and that it intended what it so expressed."); Stemmons, Inc. v. Universal C.I.T. Credit Corp., 1956 OK 221301 P.2d 212

¶18 Though we need not explore other provisions within Title 70 to aid us in ascertaining the Legislature's intent, doing so leads us to the same conclusion. Reading 70 O.S.2011, § 1210.194attending school when afflicted by a contagious disease or head lice. Subsection (A) provides "[a]ny child afflicted with a contagious disease . . . may be prohibited from attending a public . . . school until such time as he is free from the contagious disease . . . ." 70 O.S.2011, § 1210.194Ledbetter v. Oklahoma Alcoholic Beverage L. Enf't Comm'n, 1988 OK 117764 P.2d 172

¶19 While it appears that District's intention was to curb the spread of COVID-19, the Policy effectively prohibits unvaccinated students from attending school when exposed to COVID-19 because of their COVID-19 vaccination status. Because we hold "attendance" means in-person, physical attendance, we find the Policy violates § 1210.189(A)(1). Accordingly, the trial court erred when it concluded Parents were unlikely to succeed on the merits of their claim the Policy violates 70 O.S.Supp.2021, § 1210.189

¶20 Our determination that "attendance" unambiguously means in-person, physical attendance renders it unnecessary to address the other construction-based arguments proffered by District. "A cardinal precept of statutory construction is that where a statute's language is plain and unambiguous, and the meaning clear and unmistakable, no justification exists for the use of interpretive devices to fabricate a different meaning." Keating v. Edmonson, 2001 OK 11037 P.3d 882Id. We will not look to the administrative code to override the plain meaning of an unambiguous statutory term.

¶21 Lastly, we also find the trial court erred when it interpreted 1210.189(A)(1) as "prohibit[ing] a school district from placing an unvaccinated student into quarantine, even if that student was symptomatic and/or tested positive for COVID-19."

 

IV. CONCLUSION 

 

¶22 District adopted a quarantine policy in response to a dramatic spike in positive COVID-19 cases. The Policy effectively prohibited students from attending school in-person based upon their COVID-19 vaccination status, in violation of 70 O.S.Supp.2021, § 1210.189

¶23 With the passage of 70 O.S.Supp.2021, § 1210.189

MATTER PREVIOUSLY RETAINED FOR DISPOSITION;
ORDER OF THE DISTRICT COURT VACATED;
DECLARATORY JUDGMENT GRANTED. 

Kane, C.J., Rowe, V.C.J., Winchester, Darby and Kuehn, JJ., concur.

Kauger, J. (by separate writing), Edmondson, Combs (by separate writing), and Gurich, JJ., dissent.

FOOTNOTES

See Ex. To Pls.' Appl. For Temporary Inj. Defs.' Ex. 3. Included on the letter was a link to District's website, edmondschools.net, which provided the specific protocols to be followed starting August 18, 2021. See Ex. to Pls.' Appl. for Temporary Inj., Defs.' Ex. 4.

Therefore, I, J. Kevin Stitt, Governor of the State of Oklahoma, pursuant to the power vested in me by Section 2 of Article VI of the Oklahoma Constitution, hereby declare and order the following:

1. There is hereby declared an emergency caused by the impending threat of COVID-19 to the people of this State and the public's peace, health, and safety.

Exec. Order No. 2020-07, https://www.sos.ok.gov/documents/executive/1913.pdf.

I, J. Kevin Stitt, Governor of the State of Oklahoma, pursuant to the power vested in my by Section 2 of Article VI of the Oklahoma Constitution hereby order:

Effective May 4, 2021, Second Amended Executive Order 2021-07 is withdrawn and rescinded.

Exec. Order No. 2021-11, https://www.sos.ok.gov/documents/executive/1999.pdf.

 Ritter v. State, 2022 OK 73520 P.3d 37070 O.S.Supp.2021, §§ 1210.189

A. A board of education of a public school district or a technology center school district may only implement a mandate to wear a mask or any other medical device as provided in this subsection.

1. A board of education of a public school district or a technology center school district may only implement a mandate to wear a mask or any other medical device after consultation with the local county health department or city-county health department within the jurisdiction of where the board is located and when the jurisdiction of where the board is located is under a current state of emergency declared by the Governor.

The Court determined that the emphasized language usurped local control granted by the Legislature by requiring the Governor to declare or not declare a state of emergency--an impermissible delegation of authority.

The result in Ritter has no effect on the application of § 1210.189 as it relates to the case before us, as the Court held the remainder of the statute was constitutional.

Attendance, Merriam-Webster, https://www.merriam-webster.com/dictionary/attendance (visited February 8, 2023).

Attend, Merriam-Webster, https://www.merriam-webster.com/dictionary/attend (visited February 8, 2023).

63 O.S.Supp.2021, § 1-50770 O.S.2011, § 1210.194

63 O.S.Supp.2021, § 1-507

No person having a communicable disease shall be permitted to attend a private or public school, and it shall be the duty of the parent or guardian and the school of such person to exclude from the school such person until the expiration of the period of isolation or quarantine ordered for the case, or until permission to do so shall have been given by the local county health department or the State Department of Health.

70 O.S.2011, § 1210.194

Any child afflicted with a contagious disease or head lice may be prohibited from attending public, private, or parochial school until such time as he is free from the contagious disease or head lice.

 

 

KAUGER, J., with whom Gurich, J. joins, dissenting:

¶1 I agree with the dissent by Justice Combs for yet another reason. The Oklahoma Constitution art. 13 §4 addresses compulsory school attendance and the possibility of alternatives. It provides:

The Legislature shall provide for the compulsory attendance at some public or other school, unless other means of education are provided, of all the children in the State who are sound in mind and body, between the ages of eight and sixteen years, for at least three months in each year.

¶2 Although the framers did not anticipate virtual schooling, they were prescient by recognizing that another means, other than actual attendance, was possible to fulfill the attendance requirement.

 

 

COMBS, J., with whom KAUGER, EDMONDSON, and GURICH, JJ., join, dissenting:

¶1 I dissent from the majority's judgment. Their judgment vacating the trial court's temporary injunction in favor of Appellee Parents but then granting declaratory judgment in favor of Parents is most irregular. The irregular judgment is a product of the majority's unconventional approach to appellate review in this case. Had the majority chosen to address the issues raised in Appellant District's Petition in Error and Brief in Chief--i.e., issues related to the trial court's findings that Parents would likely succeed on their claim that the District's COVID-19 quarantine policy violated the Equal Protection rights of Parents' children, that Parents' evidence supported a finding of irreparable harm, and that the threatened injury to Parents' children outweighed any potential injury to the District, see Pet. in Error ex. C (listing seven "ISSUES TO BE RAISED ON APPEAL); Br. in Chief of Appellants ii (listing five propositions in the brief's index)--the majority would predictably either affirm or reverse the trial court's temporary injunction. Instead, the majority opines upon an issue that is not before this Court for appellate review--i.e., whether the trial court erred in its interpretation of 70 O.S.2021, § 1210.189because neither party has raised it.

¶2 It should go without saying that arguments which have not been presented in the petition in error or in the parties' briefs should be treated as abandoned, waived, or not preserved for appellate review. See Reddell v. Johnson, 1997 OK 86942 P.2d 200 Okla. Turnpike Auth. v. Little, 1993 OK 116860 P.2d 226State ex rel. Remy v. City of Norman, 1981 OK 139642 P.2d 219

¶3 Faced with the issues actually presented in this appeal, I would have reversed the trial court's temporary injunction because I do not believe Parents would likely succeed on Equal Protection grounds. The guidance from both the city-county health department and the CDC serve as a rational basis for the District's implementation of a quarantine policy that differentiates between students who have either been vaccinated against or recently recovered from COVID-19 and students who have not.

¶4 But I also write separately because I disagree with the majority's statutory construction of section 1210.189(A)(1). The District's quarantine policy does not violate section 1210.189(A)(1)'s prohibition against "requir[ing] a vaccination . . . as a condition of admittance to or attendance of the school or institution." That's because, as the trial court recognized, section 1210.189 "is silent and makes no mention of a school district's authority to quarantine students." ROA p.000107, Order on Temporary Inj. 7. Nothing about that statutory provision prevents the school district from implementing a common-sense quarantine policy based upon input from the local city-county health department that differentiates between students whose immune systems are bolstered against infection through either vaccination or recent prior infection and other students. If the Legislature wanted to curb such quarantine policies, it could have included language to that effect. It didn't.

¶5 Instead, the Legislature drafted section 1210.189 to prevent school districts from imposing vaccine mandates that would condition annual enrollment and admittance upon proof of vaccination. Looking at the overall scheme of the legislative bill that enacted section 1210.189, i.e., Senate Bill 658 of the he 58th Legislature's First Regular Session, it becomes clear what the Legislature was trying to do. On one hand, existing statutory law in section 1210.191(A) provided that "[n]o minor child shall be admitted to any public, private or parochial school operating in this state unless and until certification is presented to the appropriate school authorities . . . that such child has received or is in the process of receiving, immunizations" against a laundry list of contagious diseases. By enacting section 1210.189(A)(1), the Legislature demonstrated that it didn't want school districts to use the COVID-19 vaccine in a similar way. That is, the Legislature didn't want school districts to be able to exclude children from enrollment, admittance, and attendance at their schools indefinitely unless and until proof of a COVID-19 vaccination was provided. So the Legislature enacted section 1210.189(A)(1) to prevent long-term exclusion of large portions of the student body. Section 1210.189(A)(1) was not targeted at quarantine policies, as such policies would only exclude a limited amount of exposed and sick children, would only prevent daily attendance for a week or two, and would not condition the children's ultimate return upon whether they went and got the vaccine.

¶6 Nothing in the Legislature's use of the phrase "attendance of" indicates an intent to target quarantine policies. Although section 1210.189(A)(1) prohibits school districts from requiring a COVID-19 vaccine "as a condition of admittance to or attendance of the school or institution," 70 O.S.2021, § 1210.189

¶7 The statute only concerns yearly enrollment and thus does not prohibit or otherwise implicate any policy governing short-term quarantines. Although I concede that "attendance" can be used to refer to the daily presence of a student in class, I would point out that "attendance" can also be used in a more generic sense to refer to the year-long presence of a student at the institution. The former meaning can be clearly perceived in section 1210.194, where "[a] child afflicted with a contagious disease or head lice may be prohibited from attending a public, private, or parochial school" on a daily basis "until such time as he is free from the contagious disease or head lice." 70 O.S.2021, § 1210.194attendance" is used interchangeably with "school enrollment." 70 O.S.2021, § 1210.191Id. sec. 2, § 1210.189(A)(1), 2021 Okla. Sess. Laws at 4444. Second, if there was any doubt left, we could employ the canon of construction known by its Latin name noscitur a sociis--which roughly translates to "it is known by its associates"--to conclude that "attendance" means annual presence at the school. In section 1210.189(A)(1) and (2), the phrase "attendance of" is grouped together with "admittance to." As already seen in section 1210.191(A), admittance entails the process of enrollment and acceptance into a school for the coming year. Thus, "attendance of" is merely another way of saying "admittance to." Consequently, section 1210.189(A)(1)'s use of the term "attendance" does not indicate that school districts cannot use quarantine policies to prevent unvaccinated students from attending school for a short period of time.

¶8 Lastly, I disagree with the majority's statutory construction of section 1210.189(A)(1) because, even if I assume the statute prohibits certain types of quarantine policies, the District's quarantine policy did not prevent the children's "attendance" and thus did not run afoul of section 1210.189(A)(1). District argues that, because the statute does not define "attendance" (i.e., it neither limits "attendance" to physical, in-person presence in the classroom nor excludes virtual presence), Parents' children are able to "attend" school despite their status as unvaccinated such that section 1210.189(A)(1) is not violated. The majority wrongly rejects District's argument, relying solely on a dictionary that defines the verb "attend" as "to be present at; to go to." Majority Op. ¶ 17 & n.8 (citing an online version of the Merriam-Webster dictionary). As I read it, that definition cuts against the majority, because a student who virtually attends class is "present" for purposes of receiving instruction just the same as other students who are physically in the classroom. In fact, under the State Department of Education's governing regulations, the school can mark a student who virtually attends as "present" rather than absent in their attendance records. See Okla. Admin. Code § 210:35-21-2(a) (defining "[a]lternative instructional delivery systems" to include, as of August 2021, "distance learning plan[s]" and "virtual instruction"); id. § 210:35-21-2(c)(1)(C)(iii) (setting forth attendance policies for virtual instruction programs). Moreover, even if the children weren't "present" in any sense, whether physically or virtually, it appears the District's quarantine policy did not prevent children's attendance insofar as the trial court found that "[t]he District counted all P[arent]s' children as being in attendance for any day they quarantined as a result of being a close contact of a positive case of COVID-19." ROA p.000103, Order on Temporary Inj. ¶ 8, at 3. Consequently, nothing about the District's different treatment of vaccinated and unvaccinated children under the quarantine policy prevented Parents' children from being in "attendance," from receiving instruction, and from receiving credit for their presence and participation. Absent any policy preventing attendance at the school, there can be no violation of section 1210.189(A)(1).

¶9 For all these reasons, I respectfully dissent.