SMITH v. WILLIAMSON.

No. 34982.    April 14, 1953.

*256 P. 2d 174.*

324

Carter Smith, Tulsa, Douglas Gleason, Ottawa, Kan., and Thurman S. Hurst and Edwin S. Hurst, Tulsa, for plaintiff in error.

Maurice F. Ellison, Tulsa, for defendant in error.

O'NEAL, J. Nina Pearl Ansley Williamson, defendant in error, plaintiff below, on the 7th day of November, 1947, filed an application to terminate a trust estate theretofore created on November 14, 1929, in a certain divorce action, wherein Willie Ansley was plaintiff and Henry Ray Ansley and Nina Pearl Ansley Williamson were defendants. Carter Smith, administrator of the estate of Henry Ray Ansley, deceased, defendant below, filed a response to the application to terminate the trust. The trial court, upon a hearing, entered an order terminating the trust and entered its judgment for the distribution of the trust funds, and for a division of certain land. From the judgment rendered, the administrator appeals.

In this opinion, Carter Smith, administrator of the estate of Henry Ray Ansley, deceased, plaintiff in error, will hereafter be referred to as "administrator." Nina Pearl Ansley Williamson, defendant in error, will be referred to as "Nina". Henry Ray Ansley will be referred to as "Ray". Willie Ansley, Ray's second wife, will be referred to as 'Willie". Margaret Godfrey, Ray's first wife, will be referred to as "Margaret". Margaret Regina Ansley, daughter of Ray and Margaret, will be referred to as "Regina. Dona May Ansley, Ray's mother, will be referred to as "Dona". Billie Ansley, son of Ray and Willie, will be referred to as "Billie".

A chronological statement of facts is essential to a proper understanding of the question involved. During Ray's minority he lived with his mother, Dona, and his sister, Nina. A substan-

tial part of their livelihood was provided by royalty oil payments derived from a ten-acre tract of land located in Carter county, Oklahoma. Ray, as a member of the Choctaw Tribe, or Nation, acquired the ten-acre tract of land as an allotment as a member of said tribe. Ray attained his majority in 1923.

In the year 1925, Ray was involved in an automobile accident while riding as a passenger in a car operated by another. The accident was not of a serious nature, but Ray, his mother, Dona, and his sister, Nina, were fearful that Ray might be sued for damages, and that if a judgment was obtained against him, that the royalty payments from oil produced from said ten-acre tract might be subject to the payment of such judgment. To avoid this eventuality, Dona, Nina and Ray went to the office of Dona's attorney, and upon the advice of the attorney, Ray executed a deed to the land to Nina. Thereafter, and up to the events hereinafter detailed, the royalty payments were made to Nina, who turned them over to Dona, and the proceeds thereof, as formerly, were applied to their joint living expenses.

Sometime thereafter, an action for damages in the sum of $15,000 was filed against Ray and his codefendant to recover a money judgment growing out of the automobile accident referred to. This action was dismissed thereafter in consideration of the payment in the sum of $250 by Ray to the plaintiff in said action.

Ray married Willie in November, 1927. Thereafter, in 1929, Willie brought an action for divorce against Ray, in which she joined Nina as a party defendant. She alleged that Ray was the legal and equitable owner of said land, but that the legal title was held in the name of Ray's codefendant, Nina. She further alleged that the land had been previously conveyed by Ray to Nina to cover up and avoid the payment of certain debts, or contemplated debts, of Ray, and that said conveyance was made without consideration and for the purpose of avoiding the payment of said debts, including Willie's claim for alimony and for child support. Ray filed an answer in the form of a general denial to the petition of divorce. Nina filed an answer in which she pleaded that Ray, then a single man, by good and sufficient deed, conveyed the ten-acre tract to her in the year 1925, and that she is the legal and equitable owner thereof. A copy of the deed is attached to her answer.

In November, 1929, a decree in the divorce proceeding was entered, the legal effect of which is determinative of the principal issue posed in the present proceeding. The decree granted Willie a divorce and the custody of their minor son, Billie. The decree recites:

"The court further finds that the defendant, Henry Ray Ansley, insofar as this plaintiff is concerned and insofar as the issues in this case are involved, is the legal and equitable and the actual and beneficial owner of the above described property and premises, notwithstanding the record title to said premises is in said co-defendant, Nina Pearl Ansley Williamson; ***"

The decree states that the ten-acre tract located in Carter county, Oklahoma, should be divided equally between Willie and Ray as a part of the reasonable alimony of Willie, subject to a trust provision. The decree recites that the deed from Ray to Nina covering said ten-acre tract was executed without consideration, and for the purpose of defeating Ray's creditors, and that, therefore, Nina holds the legal title to said land in trust for Ray. The decree makes a provision for a monthly payment for the support of the minor son and other allowances in the form of alimony, and a monthly payment to Ray in the sum of $10. To enforce the decree, Ray and Nina were required to execute and deliver to the First National Bank & Trust Company, a corporation, of Tulsa, Oklahoma, as trustee, a deed to said land to be held by the bank in trust during Billie's mi-

nority. The bank was authorized to make a disposition of the proceeds of the oil royalties derived from said land in conformity with the decree. Nina and Ray executed a deed to the bank as the decree ordered. Finally, the decree ordered that upon the said minor reaching his majority, or in the event of his death prior thereto, that the trust should terminate, and in that event, the funds remaining in the hands of the trustee bank, after paying cost of administration, were to be paid to Nina, and that the bank should convey to her an undivided one-half interest in the ten-acre tract of the Carter county land, the other one-half undivided interest to be conveyed by the bank to Willie.

Thereafter, in May, 1931, Ray and Nina filed their verified motion to modify the terms of the divorce decree. This motion stated that the decree inadvertently provided that when the trust terminated the remaining funds were to be paid to Nina, and also a one-half undivided interest in the ten-acre tract was to be conveyed to her; whereas, the divorce decree specifically found that both the legal and equitable title to said ten-acre tract of land was owned by Ray, and not by Nina. They prayed that the decree be corrected so that the residue of the funds and the undivided one-half interest in the tract of land at the termination of the trust be conveyed to Ray.

The court heard the motion in June, 1931, and disposed of it by authorizing the trustee to pay to Ray the sum of $500 upon the condition, and with the understanding, that said trust decree be quieted and relieved from any claim of the defendant, Ray, whatsoever, except as provided in the said original divorce decree of November 14, 1929.

Ray died in 1941, but an administrator of his estate was not appointed until about the middle of 1948. Thereafter, in 1947, Nina filed an application in the original divorce case to terminate the trust. The application recited that Billie would reach his majority in 1950, and that the funds in the hands of the trustee were more than sufficient to pay the alimony and child support money provided by said decree, and she therefore requested that the residue of the funds be turned over to her, and that the trustee execute a deed conveying to her an undivided one-half interest in the ten-acre tract of land as provided for in said divorce decree.

The trustee was ordered to file its response. The trustee, in its response, claimed that there was an uncertainty as to whether Nina was entitled to the relief set forth in her application, or whether the heirs of Ray, Regina and Billie were the legal beneficiaries under the trust.

The administrator of the estate of Henry Ray Ansley, deceased, also, by cross-petition, claimed that the residue of the funds and the undivided one-half interest in the ten-acre tract should be assigned and conveyed to the administrator for the benefit of Ray's heirs.

Upon the issues thus joined the trial court entered its judgment in favor of Nina, and against the administrator, and ordered the trustee to distribute the residue of the funds to Nina, and to convey to her a one-half interest in said ten-acre tract. From the judgment so rendered the present appeal is taken by the administrator, and to reverse the judgment he asserts that: (1) The divorce decree in 1929 is not res judicata because the defendants, Ray and Nina, were not adversary parties in that proceeding; (2) the statute of limitations does not bar the enforcement of the rights of the administrator and heirs of Ray; (3) the conveyance from Ray to Nina in 1925 was not a fraudulent conveyance since the record does not establish that it was made to defeat an actual creditor; (4) that the doctrine of unclean hands has no application to the present action because (a) that Ray purged himself of fraudulent conduct, if any, by the settlement of the damage suit; and (b) that the doctrine does not preclude the enforcement of the trust established by

Nina's verified motion to modify, and (c) that the doctrine has no application for the reason that the administrator was not the moving party in this action; and (d) that the administrator is entitled to equitable relief under the pari delicto exception to the doctrine of unclean hands.

We have no doubt that under the terms of the decree upon the death or majority of Billie, one-half interest in the ten-acre tract of land would vest in Willie. The divorce decree did not adjudicate the rights as between Ray and Nina to the residue of the funds, or the other one-half interest in the land; therefore, the court was without jurisdiction or power to decree that the accumulated residue funds in the bank and the remaining one-half interest in the land should be conveyed to Nina.

In 30 Am. Jur., Judgments, §223, p. 966, the general rule is stated as follows:

"The general rule is that parties to a judgment are not bound by it in subsequent controversies between each other, where they are not adversaries in the action in which the judgment is rendered. This is true whether the judgment is rendered in favor of the plaintiff, or determines the issues in favor of the defendants. The rule applies to a fact which might have been, but was not, litigated in the original action. The theory of the many decisions supporting the general rule is that the judgment merely adjudicates the rights of the plaintiff as against each defendant, and leaves unadjudicated the rights of the defendants as among themselves."

In Noble v. Johnson, 145 Okla. 46, 291 P. 26, we said:

"As a general rule, a judgment settles nothing between codefendants who are not adversary parties among themselves, and unless their conflicting or hostile claims were brought in issue by proper pleadings or otherwise, and were actually litigated and adjudicated in the action."

In the case of De Watteville v. Sims, 44 Okla. 708, 146 P. 224, the rule is stated as follows:

"As a general rule, a judgment settles nothing between coplaintiffs or codefendants unless their conflicting or hostile claims were brought into issue, as by cross-petition or by separate and adverse answer or otherwise, and were thereupon actually litigated and adjudicated."

This rule is also stated in Smith v. Braley, 76 Okla. 220, 184 P. 586.

The earliest expression of the rule is stated in M. B. Keagy v. Wellington National Bank, 12 Okla. 33, 69 P. 811, where the Territorial Supreme Court said:

"Where two persons are sued as codefendants and answer separately, and not by way of cross-petition, or make default, the judgment of the court adjudicating the rights of the plaintiff as against such defendants, will not be res judicata as to any of the merely relative rights as between the defendants themselves."

We are of the view, and so hold, that the court was without power or jurisdiction, under the record as here presented, to adjudicate the adverse interest in the residue funds or the land as between Ray and Nina. We are fortified in this conclusion by the very words of the decree, which recites that insofar as the plaintiff, Willie, was concerned, Ray was the legal and equitable owner of the land.

Nina contends that if the original decree was not res judicata as of the time of its entry it became res judicata by judgment of the court upon the motion of Ray and Nina to modify the decree filed as of May 29, 1931.

In support of this contention Nina cites the case of Wilson-Harris, Adm'x, v. Southwest Telephone Co., 193 Okla. 194, 141 P. 2d 986, wherein we held:

"A judgment of a court denying a motion to vacate a judgment concludes the parties and their privies, not only as to the grounds contained in such mo-

tion, but as to all grounds for the vacation of the judgment which might properly have been contained therein."

However, as we have noted, the verified motion to modify the decree filed by Ray and Nina admitted that Nina had no interest in the land, and requested that it be reconveyed to Ray. In that proceeding there was no issue presented to the court as between Ray and Nina as to the ownership of the land in question; neither were they adverse parties upon the motion, and therefore the principle announced in the cited cases, supra, are equally applicable here.

Nina cites cases holding that res judicata applies, even though the determination was reached upon an erroneous view or application of law. We agree that the rule is correctly stated, but it is only applied where the parties stand in an adverse position to each other.

Nina here invokes the five-year statute of limitations as a bar to the administrator's response. The following cases, among others, are relied upon. Cassidy v. Gould, 86 Okla. 217, 208 P. 780; Royer v. Dobbins, 111 Okla. 156, 239 P. 157; Leedy v. Ellis County Fair Ass'n, 188 Okla. 348, 110 P. 2d 1099; Dillon v. Helm, 196 Okla. 140, 163 P. 539; Martin v. Goodman, 126 Okla. 34, 258 P. 871.

We think the statute of limitations did not begin to run against Ray during his lifetime, for the reason that as a remainderman he was not entitled to the possession of the land; that right was postponed until the period, for which the bank trust was established, expired. The precedent estate under the decree was in the trustee to so remain until Billie died, or reached his majority. The subsequent estate came into being only at Billie's death, or at his majority, at which time it vested in the remainderman. Willie's enjoyment of the one-half interest in the land was postponed under the terms of the trust during her son's minority, and until the trust was terminated. There being no

issue before the court as to whether Ray or Nina was entitled to the remaining on-half interest in the land, the decree, insofar as it attempted to adjudicate their rights was void. The court had jurisdiction to determine whether the interest in the land between Ray and Nina was a precedent or a subsequent interest. Finding it was a subsequent interest, the right of possession incident to it did not come into being until the precedent right under the trust terminated. This rule is stated in 33 Am. Jur., Life Estates, Remainders, etc., §187, p. 659, wherein it is said:

"The universal rule of law is that a statute of limitations does not begin to run against a right of action until that right exists. The party who has the right of action has the full period of the statute in which to enforce it. Since the remainderman has no right of possession until the particular estate is terminated, the general rule is that laches, estoppel, or the statute of limitations will not run against a remainderman prior to the termination of the life tenancy, or, as some writers say, till the life estate falls in. * * *"

Nina did not hold the legal title to the land as a gift. She held the bare legal title under the circumstances heretofore related, and as we have noticed, under her verified motion to modify the decree, she pleaded that the land belonged to Ray, and that she had no interest in it. Before the statute of limitations could be relied upon, it was incumbent upon her to renounce and repudiate the trust and claim the equitable and the beneficial ownership of the land. This she did not do.

We held in Leedy v. Ellis County Fair Ass'n, 188 Okla. 248, 110 P. 2d 1099, and in Dillon v. Helm, 196 Okla. 140, 163 P. 539, that limitation does not begin to run in favor of the trustee of a resulting trust until a clear repudiation of his trust is brought to the knowledge of the cestui que trust.

The remaining question presented is whether the administrator should be de-

nied any relief by reason of certain alleged fraudulent conduct in the conveyance of the land to Nina. Nina contends that the present action cannot be sustained under the equity maxim of unclean hands. In view of the record that Nina, with full knowledge that Ray might be sued in the automobile accident case, willingly became a trustee of a dry trust and her subsequent effort to have the land reconveyed to Ray, places her in an anomalous position in charging that Ray's administrator fails to show clean hands.

"Where both are equally in the wrong, defendant holds the stronger ground." Camp v. Camp, 196 Okla. 199, 163 P. 2d 970.

In Noble v. Johnson, 145 Okla. 46, 291 P. 26, we held that he who asserts that a transfer is fraudulent as to creditors, must assume the burden of proving that the conveyance was fraudulently made, as it will not be implied from circumstances which only awaken suspicion. There were no creditors to defraud unless it be conceded that the plaintiff in the automobile accident case was a creditor when the deed was executed.

In Smith v. Felkel, 91 Okla. 184, 217 P. 196, we held that where one person conveyed land to another for the purpose of placing it beyond the reach of an alleged creditor, and where thereafter the claim was settled and was not a bona fide claim, equity would permit the grantor to recover the land.

In Hoff v. Hoff, 106 Kan. 542, 189 P. 613, the Kansas court states the rule as follows:

"Where there are no actual creditors to be defrauded, and there is only a mental purpose to hinder imaginary creditors, equity will relieve against transfers of property without consideration."

In Hickey et al. v. Ross, 197 Okla. 543, 172 P. 2d 771, we held that an actual creditor must, in 'fact, exist to be a fraudulent conveyance.

The general rule is announced in 15 C.J.S., Compromise and Settlement, §22, p. 737.

"The compromise and settlement of a claim or cause of action is not an admission that the claim is valid, but merely admits that there is a dispute, and that an amount is paid to be rid of the ·controversy; nor is a compromise with one person an admission of any liability to someone else."

Nina contends that there was an existing creditor when the conveyance was made. She cites the case of Evans v. Cooper, Sheriff, 176 Okla. 41, 54 P. 2d 368. That case is based upon the proposition that where a party has an action pending against another, which is afterwards reduced to judgment, he is a creditor of such party before the actual rendition of the judgment. But, as we have seen, no judgment was rendered in the automobile accident suit, but the case was dismissed upon the payment by Ray of the nominal sum of $250.

This appeal is based upon the court's judgment entered December 27, 1950, upon Nina's application and motion to terminate the trust created on November 14, 1929, in the original divorce proceedings.

The trial court found the issues generally in favor of Nina, and against the administrator, and decreed that Nina be the owner of an undivided one-half interest in the ten-acre tract of land, free from any interest of the administrator and free from Ray's heirs; also, that the residue funds be awarded to Nina.

The record here discloses that Willie alleged the title to the land was held in trust for Ray. Nina, in her verified motion and application to modify the decree, alleged that she held the land in trust for Ray, and that she had no interest therein.

The court found that the land in truth and in fact belonged to Ray, and that Nina had no legal or equitable title therein. Notwithstanding all this, the

court orders that an undivided one-half interest be conveyed by the bank to Nina. If the order was complied with, the reconveyance of title could not invest Nina with a full, legal and equitable title, for the reason that the court had previously found Nina did not own the land, had no interest therein, and ordered her to convey the naked title held by her to the bank as trustee.

Upon these findings, the court could not divest Ray of the true ownership of an undivided one-half interest in the land, and invest Nina with the legal and equitable ownership therein.

We have examined the entire record and are of the view, and so hold, that this being a proceeding wherein Nina is asking a court of equity to grant her affirmative relief, that the equities in favor of the administrator and the bodily heirs of Ray predominate, and that the judgment should be and is reversed, and the bank is directed to convey an undivided one-half interest in and to the S.E.¼ of the S.E.¼ of the S.E.¼ of section 31, township 3 south, range 3 west, containing ten acres, more or less, Carter county, Oklahoma, to the administrator, plaintiff in error, together with such residue of funds not impressed with priorities under the court's decree of December 27, 1950.

The judgment is reversed.

JOHNSON, V.C.J., and CORN, DAVISON, WILLIAMS, and BLACKBIRD, JJ., concur. WELCH, J., concurs in result.