MBA COMMERCIAL CONSTRUCTION, INC., a Colorado corporation, Appellant,

v.

ROY J. HANNAFORD COMPANY, INC., an Oklahoma corporation; Aetna Insurance Company, a Connecticut corporation; Oklahoma State University, an agency of the State of Oklahoma; and Utica National Bank & Trust Company, a banking corporation, Defendants,

Frankfurt–Short–Bruza Associates, P.C., Appellee.

METRO REBAR INC., a Texas corporation, Appellant,

v.

ROY J. HANNAFORD COMPANY, INC., an Oklahoma corporation; Aetna Insurance Company, a Connecticut corporation; and Oklahoma State University, an agency of the State of Oklahoma, Defendants.

No. 71842.

Supreme Court of Oklahoma.

Sept. 17, 1991.

Rehearing Denied Oct. 29, 1991.

Brian J. Rayment, Blackstock Joyce Pollard & Montgomery, Tulsa, for appellants MBA Commercial Const., Inc. and Metro Rebar, Inc.

George D. Davis, McKinney, Stringer & Webster, P.C., Oklahoma City, for appellee Frankfurt–Short–Bruza Associates, P.C.

ALMA WILSON, Justice:

The dispositive issue in this appeal is: Whether a negligence claim accrues at the time of discovery of the negligent act even though the alleged resulting injury is sustained subsequent to the negligent act. We hold that for purposes of 12 O.S.1981, § 95 Third, a negligence claim accrues when any injury to the plaintiff, for which an action could proceed, is certain and not merely speculative.

In June, 1984, appellee, Frankfurt–Short–Bruza Associates, P.C. (FSB), an architectural and engineering firm, entered into a contract with Oklahoma State University (OSU) for the design of the two-building 21st Century Center on the OSU campus. Pursuant to the owner/architect contract, FSB was exclusively responsible for the design of the project and supervision of the project construction, including: 1) preparation of the schematic design, design development documents, working drawings and specifications; 2) assistance in the approval and bidding process; 3) full and overall responsibility for accuracy and contents of plans and specifications during all phases of construction; 4) general familiarity with construction work in progress; and, 5) approval of payments to contractor based on construction site observations. The contract provided for periodic payments to FSB throughout the phases of design, development and construction. In addition to the architect fee based on a percentage of the total cost of construction, the contract allowed additional payments for major revisions in drawings, specifications or other documents when the revisions are inconsistent with previous instructions and due to causes beyond control of the architect.[1]

The plans and specifications prepared by FSB were included in the bid of the public works construction project. Roy J. Hanna-

---

1. The petitions allege that MBA and Metro are third party beneficiaries under the contract between OSU and FSB. These allegations were denied by FSB. The trial court has not specifically ruled on that issue and we do not address it on appeal.

ford Company, Inc. (prime contractor) was the successful bidder and entered into a contract with OSU for construction of the project. Subsequent to the design phase and the bid process, error in the architectural plans and specifications was discovered. The architectural plans and specs as bid required the buildings to be constructed to support a live load of 125 pounds per square foot which was inconsistent with other portions of the design. In November, 1985, the live load designations in the plans and specs were revised, reducing the load requirement in most areas of the buildings to 100 pounds per square foot.

In the summer of 1985, the prime contractor entered into contracts with appellant, MBA Commercial Construction, Inc. (MBA), for the concrete forming and bracing work and appellant, Metro Rebar, Inc. (Metro), for the post tension design, supply and rebar placement. After discovery of error in the architectural plans and specifications but prior to performance, the original contracts with MBA and Metro were revised. Under the revised contracts, the construction work by MBA and Metro was scheduled to be completed by March 31, 1986.

Revision of the architectural plans and specs required revision in the working drawings. These revisions caused delay in the construction of the project. Water drainage problems also caused delay in the construction. During these delays, MBA and Metro maintained equipment, supplies, materials and labor at the construction site. The corrected working drawings were approved after the scheduled completion date of March 31, 1986. Upon receiving the approved working drawings, MBA and Metro went to work. After performing approximately fifty percent of the work, on September 2, 1986, MBA declared its contract in default and ceased work thereunder. After performing approximately eighty percent of the work, on November 22, 1986, Metro declared its contract in

default and ceased work. One reason MBA walked-off the construction project was that its invoice for costs after March 31, 1986, was rejected for payment. The record does not reflect whether FSB or the prime contractor or both rejected payment nor does it reveal whether Metro experienced similar refusal to pay construction costs.

MBA and Metro filed actions in the district court in Payne County, Oklahoma, seeking actual, consequential and punitive damages allegedly suffered as a result of delays in the construction progress due to the wrongful acts of the prime contractor in the construction of the two-building 21st Century Center. By second amended petition filed on February 26, 1988, MBA added FSB as a party defendant. MBA alleged that FSB negligently designed the project and negligently prepared the architectural plans and specifications for the two-building construction project and that FSB's negligence proximately caused actual and consequential damage to MBA. By amended petition, Metro also added FSB as a defendant asserting allegations and seeking damages similar to MBA.

The trial court consolidated the actions of MBA and Metro. FSB moved for summary judgment asserting that MBA and Metro's negligence claims were barred by the two-year limitation period in 12 O.S.1981, § 95 Third. The trial court granted summary judgment in favor of FSB. Subsequently, the trial court entered partial judgment relating to the issues between MBA and Metro and the prime contractor and its insurer, Aetna Insurance Company. Aetna initiated this appeal from the partial judgment. MBA and Metro counter-appealed, seeking relief from the denial of their motion for new trial on FSB's summary judgment. Resolutions of all controversies below are final, with the exception of the controversy between MBA and Metro and FSB.[2]

---

2. By order of April 3, 1972, we require the style of all cases to be parallel with the style in the trial court in accordance with 20 O.S.1981, § 3002, which provides: "The designation of parties in the caption of any cause appealed to the Supreme Court or the Court of Criminal Appeals shall correspond with the sequence in which the designation of the parties appeared in the trial court case." Frankfurt, Short, Bruza Associates, P.C. does not appear in the caption

The trial court entered a general summary judgment order in favor of FSB.[3] The Court of Appeals affirmed concluding that under the discovery rule the limitation period began to run when MBA and Metro discovered or should have discovered FSB's negligence in the preparation of the architectural plans and specifications.[4] We found merit in the dissent which expressed the view that the opinion of the Court of Appeals mistakenly equated discovery of the negligence with the actual accrual of the cause of action. We previously granted certiorari. Upon review of the record on appeal, we find the evidence insufficient to support summary judgment in favor of FSB and hold that the negligence claims alleged by MBA and Metro against FSB did not accrue until MBA and Metro suffered damages which were certain and not merely speculative.[5]

Summary judgment is appropriate only when the depositions, admissions in the pleadings, stipulations, answers to interrogatories and requests for admissions, affidavits, and exhibits on file or filed with the motion for summary judgment show that there is no substantial controversy as to any material fact. Rules for District Courts of Oklahoma, 12 O.S.Supp.1990, ch. 2, app., Rule 13 (Amended by order of Oct. 30, 1984, eff. Nov. 1, 1984). Whether an action is barred by the applicable statutory time limitation is a question of fact to be determined upon the evidence in each case. *American Insurance Union v. Jones*, 135 Okla. 101, 274 P. 478, 479 (1929). The party asserting the limitations defense has the burden to present evidence reasonably tending to establish the time-bar. *Id.* And, an affirmative defense of the statute of limitations vests upon the running of the applicable limitation period. *Trinity Broadcasting Corp. v. Leeco Oil Co.*, 692 P.2d 1364, 1367 (Okla.1984).

In accordance with the above authority, summary judgment on a statute of limitations defense in favor of the asserting party is appropriate where the evidence is sufficient to support a finding of fact of the time-bar and where the evidence establishes there is no dispute as to the time the

of either of the two consolidated cases from which this appeal was taken. Because our order requires that the appealing parties be designated in the style, we now include Frankfurt, Short, Bruza, P.C. in the sequence in which they appeared in the trial court.

3. The pleadings in this case allege claims arising out of contract and tort. The motion for summary judgment does not assert a time-bar as to any contract claim. It argues the two-year statute of limitations applicable to torts. The trial court's summary judgment on the statute of limitations applicable to remedies to recover tort damages rejected, as a matter of law, any contract theory alleged by MBA and Metro and any contract damages recoverable thereunder. The trial court is not required to set out the undisputed facts in support of its conclusion of law on summary judgment. 12 O.S.1981, § 611. However, in cases where the petition seeks damages which may be recoverable under either a tort theory or a contract theory, the better practice is for the trial court to determine the statute of limitations defense to the tort theory and the contract theory separately. *Flint Ridge Development Company, Inc. v. Benham–Blair and Affiliates, Inc.*, 775 P.2d 797, 801 (Okla.1989). In *Flint Ridge* we reversed a summary judgment on the two-year limitation period in § 95 Third in favor of architect, where plaintiff made claims for damages that may be recoverable under a

tort theory or a contract theory, stating that the trial court should appropriately limit the scope of the damages available under the appropriate theory. On remand, the proceedings should be consistent with our holding that FSB is not entitled to summary judgment on its tort statute of limitations defense.

4. *Reynolds v. Porter*, 760 P.2d 816 (Okla.1988), at 820, n. 8, explains application of the discovery rule. The discovery rule allows a plaintiff to establish that the element of injury, necessary to the cause of action, did not occur concurrent with the tortious act or omission or that the injury could not be discovered until a time after the occurrence of the negligence. Under the discovery rule, the limitation period begins to run from the time plaintiff knew or should have known of the "injury".

5. Several legal and factual questions regarding the contract theory as well as the tort theory for recovery of damages remain unresolved in this case. The trial court did not treat the two theories separately in determining the time-bar. A partial record has been transmitted to this court in this appeal. Although this court may order undesignated portions of the record, Rule 1.20, we decline to do so and limit our review to those portions designated, Rule 1.25, Rules of Appellate Procedure in Civil Cases, 12 O.S.A., ch. 15, app. 2.

limitation period began to run or the running of the limitation period.

In support of summary judgment, FSB asserts that the statute of limitations began to run against the negligence claims on the date MBA and Metro first discovered the error in the architectural plans and specifications, which was more than two years prior to commencement of the claims against FSB. MBA and Metro assert alternatively that the limitations period did not begin to run until; 1) the date of substantial completion of the project,[6] 2) the dates MBA and Metro declared their contracts in default and walked off the construction site, 3) the scheduled completion date of March 26, 1986, as specified in their contracts, or 4) the date MBA and Metro discovered they had actually suffered damages.

The parties argue the limitations issue under 12 O.S.1981, § 95 Third.[7] The statute provides:

Civil actions other than for the recovery of real property can only be brought *within the following periods, after the cause of action shall have accrued and not afterwards:*

Third. Within two (2) years: An action ... for injury to the rights of another, not arising on contract and not hereinafter enumerated....

(Emphasis added.)

■ Section 95 is not a statute of repose which extinguishes a cause of action even before it arises. Section 95 is an ordinary statute of limitations which operates to extinguish the remedy after a substantive right has vested. The limitation periods in § 95 begins to run from the time the ele-

ments of a cause of action arise.[8] *Reynolds v. Porter*, 760 P.2d 816, 820 (Okla. 1988). The elements of a cause of action arise, that is, the cause of action accrues when a litigant first could have maintained his action to a successful conclusion. *Sherwood Forest No. 2 Corp. v. City of Norman*, 632 P.2d 368, 370 (Okla.1980).

■ The three elements of actionable negligence are: (1) the existence of a duty on the part of the defendant to protect the plaintiff from injury; (2) a violation of that duty; and (3) injury proximately resulting therefrom. *Sloan v. Owen*, 579 P.2d 812, 814 (Okla.1978). The substantive right to damages vests when these three elements are present. The alleged basis of this lawsuit is that MBA and Metro have been injured by FSB's failure to properly prepare architectural plans and specifications. For purposes of summary judgment, FSB does not challenge the existence of a duty to protect MBA and Metro nor the violation of that duty. Those issues are not before us in this appeal. The alleged injuries proximately resulting from FSB's negligence in preparing the plans and specifications for which MBA and Metro seek to recover monetary damages are increased costs under their contracts. The damages sought by MBA and Metro are within the measure of damages for torts specified in 23 O.S.1981, § 61, which provides:

For the breach of an obligation not arising from contract, the measure of damages, except where otherwise expressly provided by this chapter, is the amount which will compensate for all detriment

---

**6.** MBA and Metro argued before the trial court that their claims against FSB are governed by 12 O.S.1981, § 109. MBA and Metro abandoned this argument on appeal.

**7.** There is no contract between MBA and Metro and FSB. Because contracts bind only the parties to the contract, only the parties may enforce it unless the contract is made for the benefit of a third party, in which case the third party beneficiary may enforce the contract. *Drummond v. Johnson*, 643 P.2d 634, 639 (Okla.1982). As we have noted, it appears the trial court did not consider the third party beneficiary contract claims asserted by MBA and Metro.

**8.** The terms "claim" and "cause of action" are interchangeable. The former pleading code required that a petition state facts sufficient to constitute a "cause of action." 12 O.S.1981, § 267(Sixth). Under the new pleading code the plaintiff is required to set forth a statement of the claim showing that the pleader is entitled to relief. 12 O.S.Supp.1990, § 2008(A)(1). Accordingly, the term "cause of action" has been replaced by a "claim for relief" in the pleading code. For the significance of the change in terms in the pleading code, see the Committee Comment to Section 2008, 12 O.S.A. (West Supp. 1991).

proximately caused thereby, whether it could have been anticipated or not.

■ In order for a litigant to maintain a negligence action to a successful conclusion, the litigant must allege injury or damages that are certain and not speculative. *Martin v. Griffin Television, Inc.,* 549 P.2d 85, 92–93 (Okla.1976); *Rainbow Travel Service v. Hilton Hotels Corp.,* 896 F.2d 1233, 1239 (10th Cir.1990). Thus, the summary judgment herein must be supported by evidence that establishes the time injuries or damages that are certain and not speculative were sustained by MBA and Metro. Or, if the injuries were not discoverable at the time the injuries occurred, then the evidence must establish the date the injuries could have been discovered. *Reynolds v. Porter,* 760 P.2d at 820. At that time the alleged negligence action accrued and the time limitation in § 95 Third began to run.

■ FSB contends that the statute of limitations had expired for both claims because the amended petitions were filed February 26, 1988, more than two years after MBA and Metro discovered the error in the architectural plans. In answers to interrogatories, Metro admitted knowledge of the load error in the architect's plans as of September 17, 1985. On deposition MBA's corporate controller, George Hustler, admitted that in January, 1986, he discussed the problem of the erroneous load designation with a representative of FSB and discussed the same problem with the prime contractor in the middle of February, 1986. These admissions establish that MBA and Metro had knowledge of the alleged negligent acts committed by FSB. They do not establish that injury occurred at the time the negligent acts occurred nor at the time the negligence in design and in preparing the plans and specs was discovered.

Rather, the record tends to show that MBA and Metro were not injured until after March 26, 1986. Reasonable inferences can be drawn from the undisputed facts and other materials that the parties acquiesced in the extension of the construction completion dates and that MBA and Metro had been compensated for their costs invoiced prior to the scheduled completion date. The parties do not dispute that the live load designation should have been 100 pounds per square foot, instead of 125 pounds per square foot and that the erroneous load designation caused delay in the construction of the project. There is no dispute that delay was also caused by other problems such as water drainage and revision of working drawings. Representatives of the owner, architect, prime contractor and subcontractors had several meetings wherein the problems, resolutions and attendant delays were analyzed and discussed. After these meetings, MBA and Metro were given the approved working drawings and presumably they were asked to perform the construction work in accordance with the drawings.

In the instant controversy, injury or damage would be certain and not speculative when MBA and Metro knew or should have known that they would not be paid for their costs incurred in the construction. Testimony of Hustler, on deposition, shows that MBA and Metro were not injured until after March 31, 1986. Hustler testified that MBA invoiced its "back charge"[9] in the amount of $109,000.00 for the slowdowns to the prime contractor; that Hustler, another officer of MBA and their attorney attended a meeting with the prime contractor in July of 1986 to resolve the back charges. At that point MBA was told that FSB was holding up the completion of the project. The back charges were never resolved.

On summary judgment, FSB had the burden to present evidence sufficient to establish an undisputed date prior to February 26, 1986, when injury, certain and not speculative, resulted from its undisputed negligent act. That is, FSB had the burden to present evidence to establish an earlier date that payment was refused or to show

---

**9.** According to the deposition, a back charge is a term of art of the construction industry for extra charges billed to a contractor for work performed by the subcontractor but which was not included in the contract between the parties.

that MBA and Metro knew or should have known at an earlier date that payment would be refused. The record on appeal indicates that FSB failed to carry this burden. This evidentiary record does not support summary judgment in favor of FSB on its statute of limitations defense. Accordingly, the opinion of the Court of Appeals is vacated, the judgment of the trial court is reversed and the cause remanded for further proceedings consistent with the views expressed in this opinion.

CERTIORARI PREVIOUSLY GRANTED;

OPINION OF THE COURT OF APPEALS VACATED;

JUDGMENT OF THE TRIAL COURT REVERSED AND REMANDED WITH DIRECTIONS.

HODGES, V.C.J., and LAVENDER, DOOLIN, KAUGER and SUMMERS, JJ., concur.

OPALA, C.J., concurs in result.

SIMMS and HARGRAVE, JJ., dissent.

SIMMS, Justice, dissenting:

I must respectfully dissent. In my opinion plaintiff subcontractors did not have a remedy against defendant architectural firm based on the tort theory of "negligent design" as a matter of law. Whatever recovery they were able to pursue for claims stemming from the delay of their contractual performance was limited to contract law. The major contractual issues between the parties were apparently resolved in the companion case. Remaining contractual issues, if any, which may have been presented initially in the instant matter appear to have been waived in this appeal by Metro and MBA.

I would hold that judgment was properly entered in favor of FSB because Metro and MBA did not state a tort claim against FSB; not because the statute of limitations had run on a tort action.

I am authorized to state that Justice HARGRAVE joins with me in the views expressed herein.