**MUD TRANS, INC., Appellant,**

v.

**FOSTER–DICKENSON & CO., INC., and Norman Foster, individually, Appellees,**

**Lloyd Trenary, an individual, Hillcrest Securities Corporation, Inc., a corporation, Foster–Dickenson & Co., a partnership, and Jerry Dickinson, individually, Defendants.**

**No. 75,927.**

Supreme Court of Oklahoma.

July 6, 1993.

Mark Hammons, Hammons, Taylor & Associates, Oklahoma City, OK, for appellant.

John C. Buckingham, and Wallace W. Kunzman, Jr., Oklahoma City, OK, for appellees.

PER CURIAM.

## FACTS

Mud Trans is a corporation with its headquarters in Elk City, Oklahoma. Bert Hutson is Mud Trans's principal owner and chief executive officer. Lloyd Trenary was a Certified Public Accountant, and did Mud Trans's accounting work. In 1983 Trenary sold his accounting practice to Foster–Dickenson, an Oklahoma City accounting firm. Norman Foster was a retired Foster–Dickenson partner. Trenary continued to do Mud Trans's accounting work as a representative of Foster–Dickenson.

Sometime in 1983 Foster–Dickenson, through Trenary and Foster, convinced Hutson to invest in an investment partnership as part of a tax shelter scheme marketed by a company called Hillcrest Securities. Foster and Trenary told Hutson that such an investment would be a safe one in government securities and would allow Mud Trans to avoid taxes on $1,000,000.00 of otherwise taxable income. Mud Trans's investment was to be made through an investment partnership called HPIC–VI in three installments, one each in 1983, 1984, and 1985. Mud Trans invested $265,000.00 in HPIC–VI and Foster personally invested $3,312.50. Although he had not previously invested in government securities, Hutson was a sophisticated investor, who had invested in oil and gas, real estate, agriculture, retailing, manufacturing, and other ventures.

In violation of the terms of the investment trust, Mud Trans refused to pay the 1984 installment on its investment because according to Hutson,

> ... it looked like they weren't doing their part. Why weren't we reinvested like he [Trenary] told us we were supposed to? Things weren't working out.

Foster–Dickenson refunded $33,324.35 to Mud Trans on June 10, 1984, which was all that remained of Mud Trans's $265,000.00 investment. Hutson concedes he knew at this time that the balance was irretrievably lost. This was nearly four years before Mud Trans sued.

Foster and Trenary continued to tell Hutson that the IRS would allow Mud Trans's tax deduction. Hutson did not learn until late 1986, less than two years before it sued, that the IRS considered the HPIC–VI investment with Hillcrest a sham and had

rejected Mud Trans's tax deduction. The Hillcrest tax shelter scheme was later shown to have been fraudulent.

Hillcrest's "investment" scheme involved buying government securities, which were not subject to securities regulation. Large amounts of government securities were to be bought on very small margins. The IRS held that Mud Trans's investment in the Hillcrest scheme through HPIC–VI was a sham on the ground that "the taxpayer's sole purpose in entering into the alleged trades ... was to attempt to receive a tax benefit." The record shows that one "investor" taxpayer in . a similar scheme obtained a tax loss of $101,520.00 on an investment of $10,000.00. If the IRS had allowed Mud Trans's deduction, Mud Trans would have saved more money in taxes than the $231,000.00 it lost on its investment. In order to get a deduction, Mud Trans and other taxpayers invested in such schemes *had* to suffer losses on their investments. In fact, the larger the loss was, the greater the tax deduction because it was these losses of the taxpayers' "investment" that would be offset against otherwise taxable income.

Mud Trans sued Foster–Dickenson and Foster for fraud in April, 1988.[1] Mud Trans sued both for damages from loss of its deduction and for the loss of its investment. Mud Trans alleged that it made the investment in HPIC–VI "in reliance" on Trenary's and Foster's "representations" that the investment was safe.

### ISSUE

Did Mud Trans's discovery of the loss of most of its $265,000.00 investment in June, 1984, trigger the statute of limitations on Mud Trans's fraud claim?

We hold that the statute of limitations began to run when Mud Trans learned that it had lost the bulk of its investment in 1984.

### DISCUSSION

The parties agree that the applicable statute of limitations is 12 O.S.1981 § 95

Third. The statute of limitations, therefore, is two years and started to run on Mud Trans's claim when it first discovered the fraud.

Mud Trans asks this Court to treat the fraud that caused it to lose its tax deduction as a separate cause of action, distinct from the fraud that caused Mud Trans to lose most of its $265,000.00 investment. Nevertheless, Mud Trans seeks to recover both its lost deduction and its lost investment.

Mud Trans relies heavily on *Wynn v. Estate of Holmes*, 815 P.2d 1231 (Okla.App.1991). In *Wynn*, taxpayers were assessed additional taxes and interest by the IRS. Taxpayers sued their accountant to recover the interest charged by the IRS, *but not the delinquent taxes*. The IRS informed taxpayers of its assessment of delinquent taxes more than two years before taxpayers sued. Taxpayers did not learn about the interest charges, however, until less than two years before they sued. The Court of Appeals appropriately held that taxpayers' right to sue for the *interest charges* did not arise until taxpayers learned that there were to be interest charges. *Wynn* does not apply to the facts of this case. Here, Mud Trans seeks damages for losses, and possible misconduct surrounding those losses, it had known about for nearly four years before suing.

Hutson, a sophisticated business man, knew that Mud Trans had lost over $231,-000.00 of its investment in HPIC–VI nearly four years before Mud Trans sued. Hutson was so concerned with HPIC's management at the time that he refused to pay the 1984 installment on his investment called for by ·the partnership agreement. In his deposition, Hutson testified that Foster told him, "although there was a risk, the only real risk was if the government went down, in which case it wouldn't matter anyway."

Mud Trans's reliance on *MBA Commercial Construction v. Roy J. Hannaford*

---

1. Foster–Dickenson and Foster are the only Appellants to this appeal. Trenary sought bankruptcy protection, and the record does not indicate that summons was served on any of the other defendants.

*Co., Inc.*, 818 P.2d 469 (Okla.1991), is misplaced. There, subcontractors on a building project on the Oklahoma State University campus sued the University's architect for damages resulting from the subcontractors' increased costs under the contract. The subcontractors alleged that these costs were the result of following plans and specifications, negligently prepared by the architect. The subcontractors started work on the project and billed the University, as general contractor, for the increased costs. The University refused to pay plaintiffs' statements. The University's refusal to pay occurred less than two years before the subcontractors sued, but more than two years after the subcontractor's learned that the plans and specifications had been negligently prepared. The subcontractors admitted they knew more than two years before they sued that the plans and specifications were negligently drawn, but that they believed they would be paid if they did the work. The subcontractors claimed, and we agreed, that the statute of limitations had not run because the subcontractors could not have known they would suffer economic loss until the University refused to pay their statements. Mud Trans's position is significantly different than that of the subcontractors in *Hannaford*. Mud Trans learned of its economic loss four years before it sued, and was already so concerned about the partnership's management that it breached the partnership agreement by not paying the 1984 installment of its investment.

Mud Trans relies on two cases, *Smith v. Williamson*, 208 Okl. 323, 256 P.2d 174, 180 (1953), and *Becker v. State ex rel. Dept. of Public Welfare*, 312 P.2d 935, 942 (Okl.1957), in support of its contention that the statute of limitations does not run against a trustee until he has repudiated his trust. Mud Trans claims that these cases apply because Foster, as general partner of the HPIC–VI partnership, had a

fiduciary responsibility toward Mud Trans. Neither *Smith* nor *Becker* applies to the facts of this case, however, because plaintiffs in those cases did not learn that they had sustained economic loss until shortly before asserting their claims. Plaintiffs, therefore, had no reason to suspect wrongdoing.[2]

Mud Trans alternatively relies on *Kauffman v. McLaughlin*, 189 Okla. 194, 114 P.2d 929 (1941). There, we held that the victim of a trustee's fraud is not charged with constructive discovery of the fraud, although the facts are a matter of public record. Mud Trans claims that it is therefore relieved of any obligation to have discovered its partners' fraud. We disagree because in *Kauffman* as in *Smith* and *Becker, plaintiff had no reason to suspect wrongdoing because he did not know he suffered any economic loss.* In *Kauffman*, plaintiff's brother quieted title in 1923 to a tract of real property in which plaintiff was entitled to a one fourth interest. In the quiet title action, plaintiff's brother concealed from the court that their father had executed a deed of trust, which gave plaintiff her one fourth interest in the land. Plaintiff did not learn until 1938, shortly before she sued, that she might have an interest in the property. We held that plaintiff's action was not barred, despite the quiet title action being a matter of public record, because plaintiff had no reason to know that she had suffered any loss. The statute of limitations starts to run on a trust beneficiary's claim when it learns it has suffered damage that might be the trustee's fault. Hutson made that discovery four years before Mud Trans sued.

The facts here differ from the facts of the cases upon which Mud Trans relies. Hutson learned that Mud Trans had sustained a loss of over $230,000.00 from a "safe investment in government securities," and refused to pay the 1984 installment of the investment four years before

---

**2.** In *Smith,* Id., we held that plaintiff's interest in realty did not vest until a life tenant died. Plaintiff's action, therefore, was not barred by limitations. In *Becker,* Id., we held that sisters of a decedent were not barred by limitations from claiming an interest in land to which their brother had fraudulently taken title in order to

qualify their father for old-age assistance. We so held because the sisters did not learn of either the fraud or that they might have an interest in the property until the state filed suit against the brother to set aside the fraudulent conveyance.

Mud Trans sued. In the cases Mud Trans relies on, the plaintiffs did not know they had sustained *any economic loss.* Thus, the plaintiffs in those cases could not have known they had been damaged, much less who had done the damage. In the case at bar, numerous representations were made to induce Mud–Trans to invest. One of the representations was that Mud–Trans would reap significant tax benefits. Mud–Trans learned as early as 1984 that some of the representations were false. The statute of limitations began to run at that time.

### CONCLUSION

More than four years before Mud Trans sued, Hutson was so concerned about HPIC's management that he refused to make Mud Trans's 1984 investment called for by the HPIC–VI partnership agreement. Hutson thought HPIC's managers weren't "doing their part," and he had concluded that "things weren't working out." A short time later, still nearly four years before Mud Trans brought suit, Hutson learned that $231,000.00 of Mud Trans's investment was irretrievably lost.

We hold that Mud Trans's claim for its lost investment and its claim for damages caused by its lost tax deduction are part of the same cause of action. The statute of limitations on Mud Trans's cause of action started to run when Hutson learned of Mud Trans's loss of that investment and became suspicious of the partnership's management.

The trial court properly held that the statute of limitations barred Mud Trans's cause of action.

CERTIORARI PREVIOUSLY GRANTED; COURT OF APPEALS' OPINION VACATED; DISTRICT COURT'S ORDER GRANTING APPELLEES' MOTION FOR SUMMARY JUDGMENT AFFIRMED.

HODGES, C.J., LAVENDER, V.C.J., and SIMMS, HARGRAVE, ALMA WILSON, KAUGER and WATT, JJ., concur.

SUMMERS, J., dissents.