2012 OK CIV APP 63

**CABINET SOLUTIONS, L.L.C., a limited liability company, a/k/a Cabinet Solutions & Innovations, L.L.C., Plaintiff/Appellant,**

v.

**Bill KELLEY, and Bill Kelley And Associates, Inc., Defendants/Appellees.**

No. 109,502.

Court of Civil Appeals of Oklahoma, Division No. 2.

April 19, 2012.

Certiorari Denied June 18, 2012.

Mark S. Stanley, Carpenter Stanley & Myers, Tulsa, OK, for Plaintiff/Appellant.

R. Thompson Cooper, Dawn M. Goeres, Pignato, Cooper, Kolker & Roberson, P.C., Oklahoma City, OK, for Defendants/Appellees.

DEBORAH B. BARNES, Presiding Judge.

¶ 1 Plaintiff/Appellant Cabinet Solutions, L.L.C., a limited liability company, a/k/a Cabinet Solutions & Innovations, L.L.C., (Cabinet) appeals the trial court's Order filed on May 2, 2011, granting summary judgment in favor of Defendants/Appellees Bill Kelley, and Bill Kelley and Associates, Inc., (collectively, Kelley). The question presented on appeal is whether the applicable statute of limitations, 12 O.S.2011 § 95(A)(3),[1] had run prior to Cabinet filing this suit against Kelley on November 1, 2007. Based on our review of the record on appeal and applicable law, we answer this question in the negative and, therefore, we reverse and remand for further proceedings.

## FACTS AND PROCEDURAL BACKGROUND

¶ 2 Kelley is an insurance agency and Cabinet is a manufacturer. Cabinet requested

---

1. Statutory references will be to the 2011 statutory compilation unless noted otherwise.

quotes for liability and workers' compensation coverage from Kelley. In January of 2004, Kelley solicited a quote from Nautilus Insurance on behalf of Cabinet. Cabinet accepted the quote provided by Nautilus, and Nautilus began providing insurance coverage to Cabinet pursuant to a policy effective March 8, 2004.

¶ 3 In June of 2005, Nautilus discovered Cabinet's payroll was larger than it had originally believed. In August of 2005, Nautilus demanded over $4,000 in back premiums resulting from the payroll discrepancy.[2] On September 4, 2005, Nautilus cancelled the insurance policy because of Cabinet's failure to pay the additional premiums.[3] On August 16, 2006, Nautilus sued Cabinet in Tulsa County, Case No. CS–2006–5158, seeking payment of the additional premiums. On October 5, 2007, Cabinet reached a settlement with Nautilus.

¶ 4 Cabinet asserts that Kelley provided Nautilus with incorrect information regarding the size of Cabinet's payroll and that this error resulted in Nautilus providing an artificially low insurance quote. Cabinet states it became aware of Kelley's error by October 27, 2005.[4] However, Cabinet did not file suit against Kelley until November 1, 2007, in Tulsa County, Case No. SC–2007–18086. The case was transferred from small claims to the civil docket on December 14, 2007, and renumbered Case. No. CS–2007–9987.

¶ 5 In March of 2009, Kelley filed a motion for summary judgment which was denied by the trial court in an order filed on September 24, 2009. Kelley filed a second motion for summary judgment which was also denied.

The trial court set a pretrial conference for a hearing to be held in February of 2011.

¶ 6 However, on February 23, 2011, Kelley filed a "Motion to Reconsider Intermediate Rulings on [Kelley's] Motions for Summary Judgment. . . ."[5] In its Order filed on May 2, 2011, the trial court stated that a summary judgment ruling is interlocutory and may be revisited at any time. The trial court, therefore, deemed Kelley's February 2011 motion to be "a renewal of its motion for summary judgment."[6]

¶ 7 In the May 2011 Order, the trial court found that Cabinet's suit against Kelley was filed outside the applicable two-year statute of limitations period and, on this basis, granted summary judgment in favor of Kelley.[7] In response to Cabinet's argument that the limitations period did not commence until October 5, 2007, when Cabinet paid Nautilus money to settle Case No. CS–2006–5158, the trial court explained that "neither a final judgment nor a settlement is required to show damage for accrual purposes."[8] The trial court determined that damages to Cabinet, along with the other elements of Cabinet's claims, were present more than two years before Cabinet filed suit against Kelley, and, therefore, the suit was time-barred pursuant to 12 O.S.2011 § 95(A)(3). From the May 2011 Order, Cabinet appeals.

## STANDARD OF REVIEW

¶ 8 Title 12 O.S.2011 § 2056 governs the procedure for summary judgment in the district court. "The judgment sought should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue

---

2. R., Tab 9, Exh. 2. We note that the exhibits in Tab 9 are not all consecutive.

3. R., Tab 9, Exh. 3. We note that the original policy period was effective from March 8, 2004, to March 8, 2005, and, because it is undisputed that the policy was cancelled on September 4, 2005, the original policy must have been renewed. However, the details of this renewal are unclear from the record.

4. R., Tab 4, p. 2. Tony Surritte, the Managing Member of Cabinet (*See* Tony Surritte's Affidavit, R., Tab 7, Exh. A), authored two letters dated October 27, 2005, in which he made allegations

of intentional and negligent acts, errors and omissions by Kelley. R., Tab 3, p. 4; Tab 9, Exh. 6.

5. R., Tab 9.

6. May 2011 Order, p. 2.

7. In its March 2009 motion for summary judgment, Kelley had argued that the two-year statute of limitations period, found at "12 O.S. § 95," expired prior to Cabinet filing suit. R., Tab 3, pp. 5–8.

8. May 2011 Order, p. 4.

as to any material fact and that the movant is entitled to judgment as a matter of law." 12 O.S.2011 § 2056(C). Review of a district court's order granting summary judgment is *de novo.* *Carmichael v. Beller,* 1996 OK 48, ¶ 2, 914 P.2d 1051, 1053. "Although [statute of] limitations issues may involve mixed questions of fact and law, generally, they are reviewed in this Court as questions of law." *Woods v. Prestwick House, Inc.,* 2011 OK 9, ¶ 14, 247 P.3d 1183, 1187–88 (footnote omitted).

## ANALYSIS

■■■■ ¶ 9 The statute of limitations period applicable to Cabinet's claim of negligence is two years. 12 O.S.2011 § 95(A)(3).[9] This limitation period begins to run from the time the elements of a claim arise. *MBA Commercial Constr., Inc. v. Roy J. Hannaford Co., Inc.,* 1991 OK 87, ¶ 13, 818 P.2d 469, 473. The elements of a claim arise, that is, the claim accrues, when it can first be maintained to a successful conclusion. *Id.*[10] The claim accrues as soon as each element of the claim has been satisfied. *Wing v. Lorton,* 2011 OK 42, ¶ 12, 261 P.3d 1122, 1125.

Cabinet sets forth the following issues in the Petition in Error:

1. The trial court committed error in granting summary judgment as the statute of limitations did not accrue until [Cabinet] sustained damages. [Cabinet] did not sustain damages until it settled the lawsuit with Nautilus.

2. The trial court committed error in granting summary judgment because the likelihood that [Cabinet] would pay an unexpected cost[,] as the trial court called it[,] would not have run under the trial court's analysis until Nautilus filed its lawsuit against [Cabinet] on August 16, 2006.

3. The trial court committed error in granting summary judgment because the August 2005 demand for payment and the September 4, 2005 cancellation of the insurance policy [were] insufficient to establish a likelihood that [Cabinet] would pay an unexpected cost resulting from Nautilus' agent.

Thus, the issues raised by Cabinet in the Petition in Error concern only the issue of whether *the element of damages* arose more than two years prior to the filing of its suit against Kelley on November 1, 2007. Cabinet does not raise any issues in the Petition in Error regarding the remaining elements of its negligence claim, and the fact that these remaining elements (i.e., duty and breach of duty) arose more than two years prior to the filing of Cabinet's suit against Kelley is not in substantial dispute.[11] Fur-

9. Title 12 O.S.2011 § 95 provides in part:

   A.  Civil actions other than for the recovery of real property can only be brought within the following periods, after the cause of action shall have accrued, and not afterwards:

   ...;

   3.  Within two (2) years: An action for trespass upon real property; an action for taking, detaining, or injuring personal property, including actions for the specific recovery of personal property; an action for injury to the rights of another, not arising on contract, and not hereinafter enumerated; an action for relief on the ground of fraud-the cause of action in such case shall not be deemed to have accrued until the discovery of the fraud; ....

10. *See also Consolidated Grain & Barge Co. v. Structural Sys., Inc.,* 2009 OK 14, ¶ 9, 212 P.3d 1168, 1172.

11. For example, Cabinet admits it was aware of Kelley's error by October 27, 2005, R., Tab 4, p. 2, when the Managing Member of Cabinet stated in two letters (both dated October 27, 2005) that Kelley provided misleading and fraudulent information to Nautilus in order to garner a lower general liability insurance quote from Nautilus and retain Cabinet's business. In one letter Cabinet states that Kelley

   used significantly lower payroll numbers to quote our General Liability. We believe this was done intentionally due to the fact that [Kelley] knew that we were getting a second bid on our General Liability. After completion of an audit by Nautilus Insurance Company in 2005 for the 2004/2005 policy year, Nautilus sent an invoice for additional premium ($4,232.58) because our payroll was substantially under reported by our agent. We do not report payroll directly to the insurance company, our agent does. Obviously, [Kelley] and Nautilus would have never gotten our business if [Kelley] had reported the correct payroll information to Nautilus; because the premium would have been twice as much as their competitor. We feel [Kelley] was fraudulent in reporting this information so [Kelley] could keep our business.

*See* n.4, *supra.*

thermore, Cabinet does not raise any issues in the Petition in Error regarding its fraud claim, and Cabinet admitted below that it had failed to sufficiently plead fraud.[12] Therefore, the only issue on appeal is whether the element of damages in Cabinet's negligence claim arose prior to November 1, 2005.

¶ 10 "[A] negligence claim accrues when any injury to the plaintiff, for which an action could proceed, is certain and not merely speculative." *Marshall v. Fenton, Fenton, Smith, Reneau and Moon, P.C.* 1995 OK 66, ¶ 6, 899 P.2d 621, 623 (citation omitted). The requirement of certainty applies "to the *fact* that damages have been sustained and not to the *amount* of damages." *Id.* The Oklahoma Supreme Court discussed the *Marshall* case in *Stephens v. General Motors Corp.*, 1995 OK 114, 905 P.2d 797. The Court explained as follows:

> In *Marshall,* Vaughn Marshall hired the law firm to represent him in two guardianships and the probate of an estate. Marshall served as guardian in both instances. After the matters were ostensibly concluded, the new guardian attacked the final orders and discharge of Vaughn Marshall in both guardianships and the probate. While that case was pending on appeal, Marshall filed a legal malpractice claim against the law firm alleging failure to comply with the statutory requirements for initiating, administering, and selling property connected with the probate of an estate and concluding a guardianship. The trial court granted summary judgment in favor of the law firm on the grounds of the running of the statute of limitations. The Court of Appeals affirmed. On certiorari, we decided that "[a] cause of action does not accrue until the litigant first could have maintained his action to a successful conclusion. In order to maintain an action for negligence to a successful conclusion, the litigant must be able to allege injury or damages." *Marshall,* at 624. In that case, Marshall did not have a cause of action against the law firm until he was sued by the subsequent guardian. Thus,

the statute of limitation[s] did not begin to run until Marshall was sued by the subsequent guardian.

*Stephens,* ¶ 10, 905 P.2d at 799.

¶ 11 In *Mud Trans, Inc. v. Foster–Dickenson & Co., Inc.,* 1993 OK 94, 856 P.2d 282, the Oklahoma Supreme Court discussed *MBA Commercial Constr., Inc.,* 1991 OK 87, 818 P.2d 469. In *Mud Trans, Inc.,* the Court explained as follows:

> [In *MBA*], subcontractors on a building project on the Oklahoma State University campus sued the University's architect for damages resulting from the subcontractors' increased costs under the contract. The subcontractors alleged that these costs were the result of following plans and specifications, negligently prepared by the architect. The subcontractors started work on the project and billed the University, as general contractor, for the increased costs. The University refused to pay plaintiffs' statements. The University's refusal to pay occurred less than two years before the subcontractors sued, but more than two years after the subcontractor[s] learned that the plans and specifications had been negligently prepared. The subcontractors admitted they knew more than two years before they sued that the plans and specifications were negligently drawn, but that they believed they would be paid if they did the work. The subcontractors claimed, and we agreed, that the statute of limitations had not run because the subcontractors could not have known they would suffer economic loss until the University refused to pay their statements.

*Mud Trans, Inc.,* ¶ 13, 856 P.2d at 285. The Court then explained that *MBA* was distinguishable, in part, because while the subcontractors in *MBA* learned within two years of filing suit that they would suffer economic loss, "Mud Trans learned of its economic loss four years before it sued...." *Id.*

¶ 12 As in *MBA* and *Marshall,* although Cabinet discovered Kelley's negligence more

---

**12.** Tab 7, p. 9. Cabinet did not seek leave of court to amend its petition to remedy its claim of fraud until it did so in its February 11, 2010 response to Cabinet's second motion for summary judgment, and Cabinet has raised no issue in the Petition in Error regarding the trial court's implicit denial of this request.

than two years prior to filing suit against Kelley, the fact that Cabinet would have to pay Nautilus any amount of damages as a result of Kelley's negligence was speculative and did not become certain until *within* two years of Cabinet filing suit against Kelley. Cabinet could have joined Kelley as a third-party defendant in the suit between Nautilus and Cabinet. *See* 12 O.S.2011 § 2014 (A defending party may cause summons to be served on "a person not a party to the action who is or may be liable to him for all or part of the plaintiff's claim against him . . . ."). However, had it done so, recovery of any judgment against Kelley would not have been possible until Kelley's damages became certain rather than merely speculative. By October 27, 2005, more than two years prior to Cabinet filing suit against Kelley, Nautilus had demanded over $4,000 in back premiums resulting from the payroll discrepancy, and Cabinet had acknowledged in two letters that Nautilus had sent an invoice to Cabinet for an additional premium of $4,232.58 because Cabinet's payroll was substantially under-reported by Kelley. However, it remained a matter of pure speculation whether Cabinet had any obligation to pay all or a portion of the additional premiums requested by Nautilus.

¶ 13 Rather, Cabinet's obligation to pay did not become certain until within two years of Cabinet filing suit against Kelley. The certainty required by the statute of limitations arose either upon the date Nautilus filed suit against Cabinet–August 16, 2006–or upon the date Cabinet reached a settlement with Nautilus–October 5, 2007. Both events fall within two years of Cabinet filing suit against Kelley. Pursuant to either *Marshall,* in which the Court found the statute of limitations did not begin to run until Marshall was sued by the subsequent guardian, or *MBA,* in which the Court found that the statute of limitations did not run until the University refused to pay the subcontractors' statements and the subcontractors knew they would suffer economic loss, the element of damages in this case did not arise until within two years of Cabinet filing suit against Kelley. Therefore, we find Cabinet's negligence claim against Kelley is not barred by the two-year statute of limitations set forth in § 95(A)(3).

## CONCLUSION

¶ 14 Based on our review of the record on appeal and applicable law, we find the applicable two-year statute of limitations set forth in 12 O.S.2011 § 95(A)(3) had not run prior to Cabinet filing this suit against Kelley on November 1, 2007. We reverse the trial court's May 2011 Order granting summary judgment in favor of Kelley and remand for further proceedings.

¶ 15 **REVERSED AND REMANDED FOR FURTHER PROCEEDINGS.**

FISCHER, C.J., and WISEMAN, J., concur.