FILED
United States Court of Appeals
Tenth Circuit

July 13, 2011

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

BARBARA A. ADAMS,

      Plaintiff - Appellant,

v.

UNITED STATES OF AMERICA,

      Defendant - Appellee.

No. 10-6124
(D.C. No. 5:09-CV-00093-HE)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **KELLY**, **SEYMOUR**, and **O'BRIEN**, Circuit Judges.

Plaintiff-Appellant Barbara Adams appeals from the district court's judgment, after a bench trial, awarding $20,000 for personal injuries. Ms. Adams tripped and fell on the premises of a United States Post Office in Tecumseh, Oklahoma. She filed an administrative claim for $20,000 pursuant to the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2675(a). The district court granted a motion to increase the amount of the claim, but ultimately concluded that Ms. Adams did not prove to a reasonable certainty that she would incur additional

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. It may be cited, however, for its persuasive value consistent with Fed. R. App. P. 32.1 and 10th Cir. R. 32.1.

damages from total elbow replacement surgery. We have jurisdiction under 28 U.S.C. § 1291, and we affirm.

Background

On May 8, 2007, Ms. Adams tripped on a step while walking to the front door of a post office in Tecumseh, Oklahoma. See Adams v. United States, 2010 WL 1752551 (W.D. Okla. Apr. 29, 2010). She fell forward on the concrete, injuring her face and the right side of her body. Id. at *1. On June 20, 2007, x-rays revealed a fractured elbow. See Amended Joint Appendix ("JA") 139. Ms. Adams' family physician referred her to an orthopedic surgeon, Dr. Gunderson. Id. 139.

On June 28, 2007, Dr. Gunderson recorded in his notes that Ms. Adams' elbow was fractured, but that it was healing nicely and did not require surgery or a cast. Id. 52. On July 31, 2007, new x-rays revealed that the fracture was no longer healing correctly—the bones had become displaced, creating a "situation where we are going to have to fix that elbow." Id. 53. Dr. Gunderson recommended surgery and referred Ms. Adams back to her family physician for screening. Id. A CAT scan revealed a dark spot on Ms. Adams' lung, rendering her unable to undergo surgery. See id. 54; Aplt. Br. 4.

Ms. Adams was later cleared for surgery, but on August 30, 2007, Dr. Gunderson indicated that although her arm was still mal-positioned, her range of

motion was limited, and she was experiencing pain, there was "not much" he could do and she was "going to have to live with [it]." JA 54.

On June 13, 2008, Ms. Adams filed an administrative claim for $20,000 with the United States Post Office, pursuant to the FTCA. JA 40, 42. The Post Office denied her claim shortly thereafter. Id. 50.

X-rays taken on February 5, 2009, showed that the fracture had completely separated—the humerus above and below the fracture was connected only by skin and muscle. Id. 168-69. In January 2010, based on the February 2009 x-rays, Dr. Gunderson noted that a total elbow replacement would be the only option to restore the use of Ms. Adams' elbow. Id. 56, 171. However, Dr. Gunderson indicated that the surgery would be difficult, given Ms. Adams' risk factors including uncontrolled diabetes. Id. 174; Adams, 2010 WL 1752551, at *4. Dr. Ruffin, a physician who had experience with total elbow replacements, declined to perform the surgery and recommended that Ms. Adams consult a more experienced physician at the Mayo Clinic. JA 59. He also noted that the possibility of surgery was conditioned upon Ms. Adams' controlling her diabetes. Id.

Ms. Adams filed this action on January 22, 2009. Her first amended complaint alleged negligence on the part of the Post Office and sought $20,000 in damages under the FTCA. Id. 6-7. She then sought to increase the amount of her claim by motion filed December 11, 2009. See id. 17. The district court granted

the motion, holding that the possibility of elbow replacement surgery constituted newly discovered evidence not discoverable at the time Ms. Adams filed the administrative claim. Id. 25-27. The possibility of elbow replacement surgery formed the sole basis for the court's decision. See id. 27.

After hearing the evidence at trial, the district court set forth its findings and conclusions in an order and memorandum decision. See Fed. R. Civ. P. 52(a)(1). The court found sufficient evidence to prove the government's liability, though it regarded the issue as very close. See Adams, 2010 WL 1752551, at *3. However, the court found that Ms. Adams had not proven to a "reasonable certainty" that she was a viable candidate for elbow replacement surgery, as is required under Oklahoma law. See id. at *4. The court found that elbow replacement surgery was the only potential basis for increased damages because Ms. Adams "was on notice of all the conditions—short of total elbow replacement—that might impact the amount of her claim by the time she actually filed it [with the Post Office]. In these circumstances, there is no basis for exceeding the $20,000 originally sought in the administrative claim." Id.

Ms. Adams timely appealed. JA 38. The government did not cross-appeal the grant of Ms. Adams' motion to increase the damages claim.

Discussion

Ms. Adams argues that the district court erred in awarding only $20,000

- 4 -

because (1) she proved, to a reasonable certainty, that she would suffer damages by undergoing elbow replacement surgery and (2) newly discovered evidence or intervening facts other than the availability of elbow replacement surgery justified damages in excess of the amount requested in the administrative claim. See Aplt. Br. 13, 21. In essence, these arguments challenge the district court's finding that Ms. Adams was not reasonably likely to undergo elbow replacement surgery and that she was on notice of all other damages prior to filing the administrative claim. See Adams, 2010 WL 1752551, at *4. Because the court's findings are not clearly erroneous, we affirm.

Under the FTCA, the United States is liable "in the same manner and to the same extent as a private individual under like circumstances." 28 U.S.C. § 2674. Thus, "we look to state law to resolve questions of substantive liability." Miller v. United States, 463 F.3d 1122, 1123 (10th Cir. 2006) (citation omitted). Both parties agree that Oklahoma law applies to this case.

"In determining the future effect of an injury, [Oklahoma] law requires a showing of reasonable certainty." Bane v. Anderson, Bryant & Co., 786 P.2d 1230, 1236 (Okla. 1989); see also MBA Commercial Const., Inc. v. Roy J. Hannaford Co., 818 P.2d 469, 474 (Okla. 1991). The required showing applies to the fact of damages, not their extent. Bane, 786 P.2d at 1236. In this case, the district court found that Ms. Adams "did not establish to a reasonable certainty that plaintiff should or could undergo a total elbow replacement." Adams, 2010

WL 1752551, at *4.

We review for clear error the district court's factual findings. See Fed. R. Civ. P. 52(a)(6). "If the district court's account of the evidence is plausible in light of the record viewed in its entirety, the court of appeals may not reverse it even though convinced that had it been sitting as the trier of fact, it would have weighed the evidence differently." Anderson v. City of Bessemer City, 470 U.S. 564, 573-74 (1985) (citations omitted). More simply put, "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." Id. at 574 (citations omitted).

The district court's finding that Ms. Adams was not reasonably likely to undergo elbow replacement surgery is a permissible view of the evidence and thus not clearly erroneous. Dr. Gunderson, Ms. Adams' orthopedist, testified to the difficulty of performing the surgery on Ms. Adams. See JA 194-96. Dr. Ruffin, apparently an expert on elbow replacements, see id. 173; Aplee. Br. 9, also indicated in his report that such a surgery would be extremely difficult. JA 58. Indeed, in his initial report Dr. Ruffin recommended external bracing, despite acknowledging that elbow replacement surgery was the only viable surgical option. Id. At trial, Ms. Adams testified that Dr. Ruffin told her that she was "just not a candidate for surgery at all" and that he would not recommend surgery to a family member in her condition. Id. 157. Given this evidence, the court's finding cannot be clear error.

Likewise with the court's finding that Ms. Adams "was on notice of all the conditions—short of total elbow replacement—that might impact the amount of her claim by the time she actually filed it." Adams, 2010 WL 1752551, at *4. Ms. Adams testified that her condition was the same at trial as it was in September 2007, and medical records from August 2007 note the permanent nature of her injuries. JA 54, 145, 149-50. The medical records also indicate that Ms. Adams would experience permanent pain and suffering from the injury, but that she was "going to have to live with [it]." Id. 54. Therefore, the court did not clearly err in finding that Ms. Adams was on notice of the full extent of her pain and suffering when she filed the administrative claim.

On appeal, Ms. Adams does not make any purely legal arguments. She argues that, as matters of fact, she was reasonably certain to undergo elbow surgery and her pain and suffering increased after filing the administrative claim. See Aplt. Br. 13, 21, 28. But these arguments simply refute the district court's factual findings without establishing clear error. Accordingly, we must affirm.

The government argues that the district court should not have granted Ms. Adams' motion to increase damages and did not have jurisdiction to award more than $20,000. See Aplee. Br. 28. However, these arguments are presented merely as alternative grounds to uphold the district court's judgment—the government does not argue that the district court exceeded its jurisdiction in this case. Given

our disposition, we need not and do not address the government's arguments.

AFFIRMED.

Entered for the Court


Paul J. Kelly, Jr.
Circuit Judge